VIRGINIA MUTUAL INSURANCE COMPANY

V.

NANCY LEWIS HAGY, ET AL.

Record No. 831651

January 16, 1987

Present: All the Justices

*Rufus G. Coldwell, Jr. (William R. Allcott, Jr.; Carrie L. Camp; Browder, Russell, Morris & Butcher*, on briefs), for appellant.

*Thomas W. Dixon, Jr.; Richard J. Cabaniss (Beverly C. Read; Nelson, McPherson, Summers & Santos*, on briefs), for appellees.

POFF, J., delivered the opinion of the Court.

This appeal is limited to the question whether, as the appellant-insurer states in its assignment of error, the trial court erred because it "failed to hold, as a matter of law, that [the insured] was engaged in a 'business pursuit' within the meaning of [an exclusionary clause in] her homeowner's insurance policy".

On January 15, 1980, Shantea Henderson, an infant, suffered fatal injuries while under the care of Nancy Hagy. Avis E. Henderson, Shantea's mother and administratrix of her estate, filed a wrongful death action against Hagy. Hagy was insured under a homeowner's policy issued by Virginia Mutual Insurance Company. The policy contained a clause excluding coverage for "bodily injury . . . arising out of business pursuits of any insured". Invoking the exclusionary clause, the insurer filed an action against Hagy and Henderson asking the trial court to declare

that it was "under no obligation to defend Hagy's interest" or "to pay any damages which might be awarded against Hagy".

The case was tried to a jury. The evidence showed that, for 13 years, Hagy had worked as a seamstress at a local clothing factory. Hagy testified that she "wanted to help . . . underprivileged children that needed someone to love them and give them a place to live." In 1978, she left the factory to pursue her goal of becoming a foster parent. She attended classes sponsored by a private foster-care organization in order to learn how to care for foster children. The local department of social services approved her application and placed a foster child in her home.

In October 1978, Hagy decided to start a day-care operation. She bought advertisements in the newspaper and on radio, and in November, Henderson, a public school teacher, agreed to pay Hagy $5.00 per school day to care for Shantea. Later, the department granted Hagy formal certification as a "Day Care Provider" and began paying her daily fees for providing child-care services to mothers eligible for public assistance payments.

In May 1979, Hagy renewed the advertisements, and during the following summer, she was employed to care for as many as five children a day. Hagy limited the number because she had been advised that a state license is required if the number is greater than five. Pursuant to the department's instruction manual, she kept written records on each child.

In October and November, Hagy terminated her commitment to four of the children on account of unpaid bills. Except for school holidays at Thanksgiving and Christmas, Shantea remained in Hagy's care until the tragic accident in January. During that period, the Hagy family experienced serious financial problems. Hagy began working at night and on weekends as a part-time waitress, and she applied at several places for full-time employment. In December 1979, Hagy and her husband filed a petition in bankruptcy. Hagy listed her occupation as "Waitress and baby-sitter". On a schedule entitled "Profit or (Loss) From Business or Profession" appended to her 1979 federal income tax return, she reported a net profit of $500.00 earned in "Day Care". Hagy testified that the profit she reported was not attributable to the money she received from Henderson in the last two months of that year. She said that she made "only a couple dollars" and that she "actually didn't make any money, if you count all my expenses."

The dispositive issue at trial was whether Hagy was engaged in a business pursuit when Shantea lost her life. The insurer filed a motion for summary judgment, asking the court to decide that issue as a matter of law. The court overruled the motion and submitted the question to the jury by a single interrogatory. The jury found against the insurer. The trial court overruled the insurer's motion to set the verdict aside and entered an order declaring that the insurer "is obligated to defend defendant Hagy's interests". Proceedings on the wrongful death action were suspended pending disposition of this appeal.

■ On appeal, all parties agree that, for purposes of the exclusionary clause, the term "business pursuit" is correctly defined in the following language:

> To constitute a business pursuit, there must be two elements: first, continuity, and, secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements.

*Fadden* v. *Cambridge Mut. Ins.*, 51 Misc.2d 858, 862, 274 N.Y.S.2d 235, 241 (1966) (citations omitted), *aff'd* 27 A.D.2d 487, 280 N.Y.S.2d 209 (1967). The essence of this definition was incorporated in an instruction to the jury, it is the law of the case, and we apply it in our analysis.

In defense of the judgment, the defendants argue that the only question of law involved in this case is the definition of the contract term "business pursuit"; that the jury was properly instructed in the law; that the question whether Hagy was engaged in a business pursuit on January 15, 1980 was a question of fact; that the jury has resolved that question in their favor; that the jury's determination is supported by credible evidence; and that this Court must affirm the judgment confirming the verdict.

■ We recently rejected a similar argument. In *Allstate Insurance Co.* v. *Patterson*, 231 Va. 358, 344 S.E.2d 890 (1986), the issue, raised in an action for declaratory judgment, was whether, for purposes of uninsured motorist's coverage, a motorcycle operator was a resident of the household of the named insured. The trial court submitted the issue to a jury on an interrogatory re-

quiring a special verdict. The jury found against the insurer, the trial court entered an order declaring that the driver was an insured, and we granted the insurer an appeal. Applying the facts in evidence to case-law definitions, we held that the issue at trial was one "upon which reasonable persons should not differ" and that "the trial court should not have submitted the question to the jury". *Id.* at 363, 344 S.E.2d at 893. Accordingly, we reversed the judgment and entered final judgment for the insurer.

We make the same analysis and reach the same conclusion in this case. Invoking the continuity-profit motive test defined in the jury instruction, the defendants contend that, even if Hagy's day-care activity once satisfied that test, the business pursuit was discontinued in November 1979; that, thereafter, Hagy's motivation for caring for Shantea was love for the child rather than the prospect of financial gain; and, hence, that the exclusionary clause was inapplicable on January 15, 1980.

■ We cannot agree. From its inception, Hagy's operation bore all the indicia of a business pursuit. Hagy solicited day-care contracts with working parents through newspaper and radio advertisements and terminated those contracts when parents were unable to pay the fee. Hagy sought, and received, certification as a day-care provider with the department of social services, and the department compensated her for the day-care services she rendered. Significantly, numerous documents introduced as exhibits demonstrate that she was careful to keep all the medical and financial records required by the department.

■ It is true, as the defendants say, that Hagy lost the income from all but one of her day-care clients two months before Shantea was injured, abandoned her advertising campaign, and began to look for other sources of income. But she did not abandon her occupation as a day-care provider. On the contrary, the contract she made with Henderson in 1978 continued in effect until the day of Shantea's death. Although the "couple dollars" she earned was meager profit, she continued to market her services "as a means of livelihood, gainful employment, means of earning a living [or] procuring subsistence". *Fadden*, 51 Misc.2d at 862, 274 N.Y.S.2d at 241. Business ventures do not lose their identity as such merely because profits decline.

■ Applying our reasoning in *Allstate Insurance Co.*, we hold that the trial court should have ruled as a matter of law that Hagy was engaged in a business pursuit at the time of Shantea's

death. We will reverse the judgment and enter final judgment, declaring that the insurer is not obligated to defend the wrongful death action or to pay any damages awarded the plaintiff in that suit.

*Reversed and final judgment.*