ST. PAUL INSURANCE COMPANY OF ILLINOIS, Plaintiff-Appellee, v. LANDAU, OMAHANA AND KOPKA, LTD., *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—91—2008

Opinion filed April 19, 1993.

Landau, Omahana & Kopka, Ltd. (Robert J. Kopka, of counsel), and Frederick A. Lurie, both of Chicago, for appellants.

Hinshaw & Culbertson, of Chicago (Thomas M. Hamilton, Nancy G. Lischer, and Gary J. Bazydlo, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant law firm Landau, Omahana & Kopka, Ltd. (the firm), and defendants Byron Landau, Gail Omahana, Robert Kopka and Jeffrey Herden (the Landau defendants) appeal from an order of the circuit court of Cook County granting plaintiff St. Paul Insurance Company of Illinois' (St. Paul's) motion for judgment on the pleadings. The order grants the relief requested in plaintiff's motion for a declaratory judgment, which contended that plaintiff was not obligated to defend or indemnify defendants in a defamation suit brought by defendant Karen Conti, a former employee of the firm.

The record indicates the following facts. St. Paul had issued a commercial general liability policy to the firm for the period between May 29, 1988, through May 29, 1989. That policy provided, in relevant part, as follows:

"*What This Agreement Covers*
\* \* \*

Personal Injury and advertising injury liability. We'll pay amounts any protected person is legally required to pay as damages for covered personal injury or advertising injury that's caused by an offense committed while this agreement is in effect.
\* \* \*

*Personal injury* means injury, other than bodily injury, caused by any of the following offenses that result from your business activities, other than advertising, broadcasting, publishing or telecasting done by or for you:
\* \* \*

—libel or slander;

—written or spoken material made public which belittles the products or work of others \* \* \*.
\* \* \*

*Advertising injury* means injury caused by any of the following offenses that result from the advertising of your products or work:

—libel or slander;

—written or spoken material made public which belittles the products or work of others \* \* \*
\* \* \*

*Exclusions—What This Agreement Won't Cover*
\* \* \*

False material. We won't cover personal injury or advertising injury that results from written or spoken material made public by or for the protected person if the material is known by that person to be false."

On February 18, 1990, defendant Conti filed a two-count complaint against the other defendants, alleging wrongful termination, unpaid compensation and defamation arising out of her dismissal from the firm. However, by December 19, 1990, Conti had filed a nine-count verified amended complaint in her suit against defendants, alleging: (1) breach of contract; (2) wrongful discharge; (3) theft of property; (4) failure to reimburse expenses; (5) failure to pay earned fees; (6) defamation; (7) intentional interference by the Landau defendants with Conti's business relationship with the firm; (8) intentional interference by the Landau defendants with Conti's business relationship with clients; and (9) intentional interference with prospective business relationships.

Generally, the verified amended complaint alleges that Conti was fired to cover up a mistake made by Landau in handling a case and because Omahana was jealous of Conti. The complaint further alleges that after firing Conti, the Landau defendants stated to other firm employees and to third parties that Conti was incompetent and had defrauded the firm. The specific allegations made in the complaint will be discussed below, when appropriate.

On December 19, 1990, St. Paul filed a complaint for declaratory judgment against defendants, seeking declarations that it had no duty to defend or indemnify the firm or the Landau defendants against Conti's suit. On March 11, 1991, St. Paul moved for judgment on the pleadings, pursuant to section 2—615(e) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615(e)). The transcripts of proceedings on this motion indicate that the trial court found that count VI of the Conti complaint, alleging defamation, was the only count which would raise the possibility of coverage under the St. Paul policy. The trial court indicated that

the alleged conduct in this case could be considered business activity within the scope of the St. Paul policy. However, the trial court also indicated that the allegations of the Conti complaint alleged that the firm and the Landau defendants knew the statements they made about plaintiffs were false. Thus, coverage of the claim made in count VI of the Conti complaint was excluded by the language of the policy. Accordingly, the trial court granted judgment on the pleadings in favor of St. Paul. The firm and the Landau defendants filed a timely notice of appeal to this court.

On appeal, the firm and the Landau defendants contend that the trial court erred in granting judgment on the pleadings because the allegations of the Conti complaint trigger St. Paul's duty to defend.

This appeal concerns a motion for judgment on the pleadings (see Ill. Rev. Stat. 1989, ch. 110, par. 2—615(e)), which is similar to a motion for summary judgment insofar as both suggest that no material issue of fact exists. In deciding such a motion, the court must determine from the allegations in the pleadings, construing them most strongly against the movant, whether there is a question of material fact that would bar entry of judgment on the movant's behalf. (*Daymon v. Hardin County General Hospital* (1991), 210 Ill. App. 3d 927, 932, 569 N.E.2d 316, 319.) This court may review the question of whether an issue of material fact existed and, if not, whether the motion was properly granted or denied. See *Mitchell v. Waddell* (1989), 189 Ill. App. 3d 179, 182, 544 N.E.2d 1261, 1263.

■ In this case, plaintiff moved for judgment on the pleadings regarding plaintiff's complaint for declaratory judgments that it had no duty to defend or indemnify the firm and the Landau defendants against the Conti lawsuit. Generally, an insurer's duty to defend an action brought against an insured is determined solely from the allegations of the complaint. In turn, when a complaint sets forth allegations which are within or potentially within the coverage of the policy, the insurer must defend the action. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335, 339; *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, 933.) The duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured even if only one or some of them are within the policy coverage. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 194, 355 N.E.2d 24, 28.) The insurer may safely refuse to defend only when the allegations clearly show that the claim alleged is be-

yond coverage. *La Rotunda*, 87 Ill. App. 3d at 451, 408 N.E.2d at 933.

Conti's verified amended complaint, which is attached as an exhibit to St. Paul's complaint, contains the following allegations:

"2. By their conduct, defendants maliciously breached Ms. Conti's employment contract as an associate and an attorney with the Landau law firm, wrongly terminated Ms. Conti's employment, willfully interfered with Ms. Conti's present and future business and professional relationships, fraudulently refused to pay monies due to Ms. Conti, intentionally stole property from Ms. Conti, and deliberately made false statements concerning Ms. Conti's character and competency and accusing her of fraud.

3. This illegal, tortious, and outrageous conduct was motivated, planned, and performed by defendants recklessly and maliciously and with the intent to damage Ms. Conti and to place her in a false light.

\* \* \*

7. Each defendant, except Mr. Herden, knowingly, willfully, and fully participated in the misconduct described in this complaint. Mr. Herden became a member of the Landau firm shortly after December 10, 1988, the date of Ms. Conti's wrongful termination. Mr. Herden knowingly, willfully, and fully participated in the misconduct that occurred after he joined the Landau firm.

\* \* \*

30. Shortly after December 10, 1988, Mr. Landau, acting for himself and for the other defendants, falsely stated to professional and non-professional employees of the Landau firm that Ms. Conti had incompetently handled all files assigned to her, that she was not competent to practice law, that she had not attended the New York City seminar [which Conti alleges she attended], and that she defrauded the Landau firm. Ms. Conti did not learn about the actual statements made by Mr. Landau until shortly before the filing of [the] action.

31. Further, on information and belief, on dates and at times presently unknown to Ms. Conti and which will be obtained by discovery of the clients of the Landau firm, defendants repeated these false statements to clients of the Landau firm.

32. Moreover, after Ms. Conti began her efforts to mitigate her damages by seeking new professional employment, defendants received requests from prospective professional employers about Ms. Conti's relationship with the Landau firm. On February 16, 1989, one or more of the individual defendants repeated these false statements to third parties.

33. These statements were false when they were made.

34. Defendants knew and intended that these statements were false.

35. Defendants knew and intended that these statements would injure and damage Ms. Conti in her person, in her profession, and in her property.

\*\*\*

37. These statements were made maliciously, in bad faith, and without basis or justification.

\* \* \*

53. The false statements made by defendants constitute defamation *per se*."

In this case, the trial court determined that St. Paul had no duty to defend or indemnify the firm or the Landau defendants because the St. Paul policy does not "cover personal injury or advertising injury that results from written or spoken material made public by or for the protected person if the material is known by that person to be false." The trial court indicated that its decision relied on this court's opinion in *Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 411 N.E.2d 1157. In *Freyer*, the insurer claimed it had no duty to defend against claims for assault and battery and property damage because the policy excluded coverage for bodily injury or property damage "which is either expected or intended from the standpoint of the insured." (*Freyer*, 89 Ill. App. 3d at 620, 411 N.E.2d at 1159.) This court held there was no duty to defend against a complaint alleging assault and battery or other intentional injury and not also alleging negligence. *Freyer*, 89 Ill. App. 3d at 621, 411 N.E.2d at 1160.

The *Freyer* court also noted that "malice or an intention to injure is the gist of an action for assault and battery." (*Freyer*, 89 Ill. App. 3d at 622, 411 N.E.2d at 1161.) The *Freyer* court then listed a number of definitions for the term "malice," including: (1) the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict injury or under circumstances that the law will imply an evil intent; (2) an intent to do wrongful harm and injury and without just cause; and (3) a wrong inflicted on another with an

evil intent or purpose, requiring the intentional perpetration of an injury or wrong on another. See *Freyer*, 89 Ill. App. 3d at 622, 411 N.E.2d at 1161 (and citations therein).

Yet the tort of defamation is historically and analytically distinct from torts such as assault and battery. Historically, the common law provided strict liability for defamatory falsehoods, subject only to the defenses of truth or privilege. (See *Rosner v. Field Enterprises, Inc.* (1990), 205 Ill. App. 3d 769, 781, 564 N.E.2d 131, 137.) However, a number of landmark United States Supreme Court decisions interpreting the first and fourteenth amendments greatly altered the landscape of defamation law. (See *Rosner*, 205 Ill. App. 3d at 781-85, 564 N.E.2d at 137-40.) Without repeating this court's lengthy discussion and analysis of those Supreme Court decisions, the result of these decisions is that a defamation is now generally governed by two standards of fault and proof—negligence and actual malice. See, *e.g., Rosner*, 205 Ill. App. 3d at 781, 564 N.E.2d at 137.

"Actual malice" is a term of art developed in the aforementioned Supreme Court decisions. A plaintiff required to meet this standard must plead and prove that a statement was made with knowledge of its falsity *or* in reckless disregard of its truth or falsity. (See *Mittleman v. Witous* (1989), 135 Ill. 2d 220, 237, 552 N.E.2d 973, 981.) "Reckless disregard" may be defined as publishing a defamatory statement despite a high degree of awareness of its probable falsity or entertaining serious doubts as to its truth. (*Mittleman*, 135 Ill. 2d at 237-38, 552 N.E.2d at 981.) A plaintiff required to show actual malice need not show malice in the moral sense of hate, vindictiveness or animosity. (*Edwards v. University of Chicago Hospitals & Clinics* (1985), 137 Ill. App. 3d 485, 490, 484 N.E.2d 1100, 1105.) Nor is actual malice to be equated with an intention to do an act from which injury may be expected. See *Reed v. Northwestern Publishing Co.* (1988), 124 Ill. 2d 495, 522, 530 N.E.2d 474, 486.

■ The concept of "actual malice" is important here because the above-cited *Mittleman* decision involved a factual matrix largely similar to that presented in the Conti complaint. In *Mittleman*, our supreme court held that the plaintiff would be required to plead and prove actual malice, rather than mere negligence. (*Mittleman*, 135 Ill. 2d at 237, 552 N.E.2d at 981.) Without expressing any opinion regarding the Conti lawsuit, it would appear that the Conti complaint strives to meet the actual malice standard and not run afoul of *Mittleman*. The various paragraphs of the Conti complaint

quoted above allege that defendants acted not only intentionally but also recklessly and maliciously. Thus, it appears that the "gist" of count VI of the Conti complaint is actual malice.

As the above discussion indicates, a plaintiff need not plead or prove that a defendant knew a statement was false to plead or prove actual malice. In this case, Conti pleaded recklessness in paragraph 3 of her verified amended complaint and this allegation is incorporated in the defamation count of the complaint. Allegations of recklessness may bring a defamation claim within the potential coverage of a policy which covers defamation but excludes knowing falsehoods. See, e.g., *E E O C v. Southern Publishing Co.* (5th Cir. 1990), 894 F.2d 785.

In its brief, St. Paul quotes Conti's response to the motion for judgment on the pleadings, in which she characterizes her verified amended complaint as alleging "no negligent or unintentional or unknowing act of liability." As noted above, St. Paul's duty to defend must be determined by reference to the four corners of the complaint. Plaintiff's later characterization of that complaint is not to be considered here. Nor need we consider the contention of the firm and the Landau defendants that a determination of noncoverage is premature where Conti could amend her complaint to allege simple negligence.

For all of the aforementioned reasons, we reverse the judgment of the circuit court of Cook County and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY and O'CONNOR, JJ., concur.