**Richard C. FUISZ, Plaintiff–Appellant,**

v.

**SELECTIVE INSURANCE COMPANY OF AMERICA, Defendant– Appellee.**

**No. 94–2120.**

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1995.

Decided Aug. 1, 1995.

**ARGUED:** Robert H. Shulman, Howrey & Simon, Washington, DC, for appellant. William Randolph Allcott, Jr., Harman, Claytor, Corrigan & Wellman, Richmond, VA, for appellee. **ON BRIEF:** Steven N. Gersten, Howrey & Simon, Washington, DC, for appellant. John M. Claytor, Harman, Claytor, Corrigan & Wellman, Richmond, VA, for appellee.

Before ERVIN, Chief Judge, and NIEMEYER and MOTZ, Circuit Judges.

Reversed in part, vacated in part, and remanded by published opinion. Judge MOTZ wrote the majority opinion, in which Chief Judge ERVIN joined. Judge NIEMEYER wrote a dissenting opinion.

## OPINION

MOTZ, Circuit Judge:

This case requires us to decide whether an insurer must provide a defense, pursuant to a personal liability policy, to an insured against whom a defamation action has been filed. The policy expressly provides coverage for defamation, but excludes coverage for acts committed with intent to cause personal injury and for acts arising out of the insured's business. In light of these exclusions, the district court held that the insurer had no duty to defend or indemnify the insured and so granted summary judgment to the insurer. We conclude that neither policy exclusion is clearly applicable to the claims made in the underlying complaint that was filed against the insured. Accordingly, as to indemnification, we vacate the judgment; as to the duty to defend, we reverse and remand with direction that the district court award summary judgment to the insured.

### I.

The relevant facts are undisputed. Selective Insurance Company of America (Selective) sold to Dr. Richard A. Fuisz two identical Personal Catastrophe Liability Policies—the first policy was effective from February 20, 1991, to February 20, 1992, and the second from February 20, 1992, to February 20, 1993. Both policies provide:

If a suit is brought against an insured for damages because of bodily injury, *personal injury*, or property damage caused by an occurrence[1] to which this policy applies, we [Selective] will provide a defense at our expense by counsel of our choice.

(Emphasis added.) The policies define "personal injury" to include "injury arising out of ... [l]ibel, slander or defamation of character...."

The policies also contain numerous exclusions from coverage, including two material to this case. The first states that Selective will not provide coverage for "any act committed by or at the direction of an insured with intent to cause ... personal injury...." The other relevant exclusion provides:

We [Selective] do not cover bodily injury, personal injury or property damage arising out of or in connection with a *business* engaged in by an insured.... This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

(Emphasis added.) Under the policies, "[b]usiness includes trade, profession, occupation or the continuing of an activity with monetary gain or the hope or expectation of monetary gain."

On April 17, 1992, Terex Corporation, Terex Equipment Limited and KCS Industries (collectively "Terex"), filed a complaint against Fuisz and Seymour M. Hersh in United States District Court for the District of Columbia alleging claims of libel and slander against both defendants. In its complaint, Terex alleges that Fuisz "embarked on a scheme and plan to injure plaintiffs by publicly disseminating false accusations designed to tarnish their good name and reputation in the business community." Terex further alleges that "[i]n or about 1987," Fuisz and Terex entered into negotiations whereby Fuisz would act as a Terex representative in Saudi Arabia. Fuisz and Terex were unable to reach any agreement, however. Thus, negotiations between the two ceased and, according to the complaint, Fuisz launched a personal "vendetta" in order "to retaliate against [Terex] for the loss of a business opportunity Fuisz believed to be extremely lucrative."

Terex goes on to state that Fuisz, with the aid of Hersh, in late 1991 and early 1992, published several defamatory statements accusing Terex of violating federal law by supplying military equipment to Sadaam Hus-

---

**1.** The policies define "occurrence" as "[a]n offense, including a series of related offenses, committed during the policy period, which results in personal injury."

sein and the government of Iraq during the recent Persian Gulf War. Accordingly, in its complaint Terex seeks compensatory and punitive damages "under the common law for defamation" against Fuisz and Hersh. The Terex complaint contains four causes of action against Fuisz—three based on libel and one on slander. With respect to each of the four claims, Terex alleges that "Fuisz published the defamatory statements ... [and] knew that the statements were false, or published the statements with reckless disregard as to whether they were true or false." In addition, Terex alleges that "[i]n publishing these false and defamatory statements ..., Fuisz was motivated by actual malice and wrongfully and willfully intended to injure plaintiffs."

On May 17, 1992, Fuisz notified Selective of the pending Terex complaint and requested that Selective provide him with a defense to the suit pursuant to the terms of the personal liability policy it had issued to him. Selective denied coverage solely on the basis of the intentional acts exclusion. Fuisz again requested coverage and Selective responded by again denying coverage—this time listing the business exclusion as an additional basis for the denial.

Fuisz subsequently filed this action, seeking a declaratory judgment that Selective must defend and indemnify him in the Terex lawsuit. Fuisz moved for summary judgment with regard to Selective's duty to defend, and the district court denied the motion. Selective then moved for summary judgment with regard to both its duty to defend and its duty to indemnify, relying on the intentional acts exclusion and the business exclusion. Fuisz responded by filing another motion for summary judgment with respect to the duty to defend. Ruling from the bench, the district court denied Fuisz's motion and granted Selective's motion, reasoning:

I find there are no issues of fact in dispute that this issue is to determined by looking at the four corners of this policy. And there is an exclusion for libel and slander that arises out of or in connection with a business engaged in by the insured. And the solicitation of the discussions of

this contract certainly is a business that he was engaged in. And that these statements that are alleged to have been made were made, did arise out of that business that he was engaged in. And the fact that it didn't result in a contract which was fruitful to him, it was still a business that he was involved in.

I also find that the allegations in this complaint allege an intentional personal injury that was done with the intent to harm, and that exclusion applies as well.

Fuisz timely appealed the district court's decision to this Court.

II.

We review a grant of summary judgment *de novo. United States v. Jefferson–Pilot Life Ins. Co.,* 49 F.3d 1020, 1021 (4th Cir.1995); *see also Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991) (concluding that federal courts of appeal must review *de novo* district court determinations of state law). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Hinkleman v. Shell Oil Co.,* 962 F.2d 372, 375 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). Where, as here, there are no material facts in dispute, summary judgment review turns solely on the question of whether the trial court properly construed the law.

In addition, we must resolve this diversity action pursuant to Virginia law because the case was filed in federal court in the Eastern District of Virginia. *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir.1995). Virginia adheres to traditional choice of law rules; with respect to contract actions like this one, the place of contracting governs the substantive issues of the case. *Frye v. Commonwealth,* 231 Va. 370, 345 S.E.2d 267, 272 (1986). Selective issued the two personal liability policies to Fuisz from its office in Richmond, Virginia, and the policies were delivered to Fuisz—a Virginia resident—in Great Falls, Virginia. Therefore, as Selective recognizes, notwithstanding the fact that

its principal place of business is in New Jersey, the substantive law of the Commonwealth of Virginia controls our interpretation of the insurance policy.

■ As in many other states, the duty of an insurer to defend an insured in Virginia "is broader than its obligation to pay" or to indemnify its insured. *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 397 S.E.2d 100, 102 (1990). Indeed, an insurer may be required to provide a defense even where the ultimate resolution of the case demonstrates that the insurer is not liable for indemnification. *See Lerner v. General Ins. Co. of America*, 219 Va. 101, 245 S.E.2d 249, 252 (1978) (where underlying claim for punitive damages "was ancillary to the claim for compensatory damages" insurer had a duty to defend the insured against the punitive damages claim even if public policy prohibited indemnity for a punitive damages award). Determination of whether an insurer has a duty to defend requires examination of (1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy. *Town Crier, Inc. v. Hume*, 721 F.Supp. 99, 103 (E.D.Va.1989), *aff'd*, 907 F.2d 1140 (4th Cir.1990).

■ With regard to the policy terms, because insurers almost invariably author the policies they issue, ambiguous language in those policies is construed in favor of an insured. Thus, if there is any ambiguity regarding potential coverage, the insurer must provide a defense. *Smith v. Allstate Ins. Co.*, 241 Va. 477, 403 S.E.2d 696, 697–98 (1991). Conversely, exclusions from coverage are enforceable only when the exclusions "unambiguously bring the particular act or omission within its scope." *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 427 S.E.2d 193, 196 (1993). Moreover, the burden rests on the insurer to establish the clear applicability of a particular exclusion from coverage. *Johnson v. Insurance Co. of North America*, 232 Va. 340, 350 S.E.2d 616, 618 (1986). Therefore, "[w]hen an initial pleading 'alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy,' the insurance company is

obliged to defend its insured." *Parker v. Hartford Fire Ins. Co.*, 222 Va. 33, 278 S.E.2d 803, 804 (1981) (quoting *Lerner*, 245 S.E.2d at 251); *see also Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 245 S.E.2d 247, 249 (1978).

■ In summary, as we have previously explained:

If a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense.

*Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 767 (4th Cir.1978). Accordingly, an insurer is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy. *Reisen v. Aetna Life and Casualty Co.*, 225 Va. 327, 302 S.E.2d 529, 531 (1983).

With these principles in mind, we turn to the case at hand to determine whether the two exclusions on which Selective relies "clearly and unambiguously," *Floyd*, 427 S.E.2d at 196, establish that Terex's claims against Fuisz are not covered by the Selective policies.

## III.

The first of these exclusions is the intentional acts exclusion, which eliminates coverage for "any act committed by or at the direction of an insured with intent to cause ... personal injury...." This exclusionary language is common to many personal liability policies; what distinguishes the Selective policies from many others is that they also specifically provide coverage for injuries arising from defamation. Thus, while excluding coverage for any act by the insured done with "intent to cause ... personal injury," at the same time the policies provide the insured coverage for "personal injury," including "injury arising out of ... [l]ibel, slander or defamation of character...."

At first glance, Selective's coverage of personal injuries arising out of defamation and

its exclusion for acts intended to cause personal injury appear to be in direct conflict, particularly when one recognizes that defamation is commonly classified as an "intentional tort." *See, e.g., Snead v. Harbaugh,* 241 Va. 524, 404 S.E.2d 53, 55 (1991). For this reason, some courts have gone as far as to conclude that where, as in this case, the policy specifically provides coverage for defamation but excludes coverage for intentional acts, the policy is inherently ambiguous and, therefore, must be construed in favor of coverage. *See, e.g., Hurst–Rosche Eng'rs v. Commercial Union Ins. Co.,* 51 F.3d 1336, 1345–46 (7th Cir.1995) (applying Illinois law). On the other hand, if the intentional acts exclusion was strictly interpreted to eliminate coverage for injuries arising from all defamation claims because defamation is an intentional tort, then this exclusion would swallow the policy coverage for defamation, permitting Selective to "give with the right hand and then take away with the left." *Curtis–Universal, Inc. v. Sheboygan Emergency Medical Servs., Inc.,* 43 F.3d 1119, 1123 (7th Cir.1994). As Selective admits, such defamation "coverage" would be meaningless. *See Liberty Life Ins. Co. v. Commercial Union Ins. Co.,* 857 F.2d 945, 951 (4th Cir.1988). Accordingly, Selective does not assert that the policies at issue here exclude coverage for injuries arising from all defamation claims. Rather, Selective expressly concedes that the policies "cover[ ] libel and slander unless the insured acted with specific intent to cause harm."

█ Thus, Selective argues that its intentional acts exclusion must be read to exclude coverage of all claims for injury arising out of defamation when the insured is alleged to have specifically intended to cause injury to the plaintiff's reputation. By contrast, Fuisz asserts that the intentional acts exclusion only bars coverage of defamation claims when the insured is alleged to have intended to defame the plaintiff. Returning to the precise language of Selective's policy, the intentional acts exclusion provides, "[w]e do not cover any act committed by ... an insured with intent to cause ... personal injury...." "Personal injury" is defined in the policy as "injury arising out of ... defamation...." Accordingly, if one substitutes the policy definition of "personal injury" for the term "personal injury" within the intentional acts exclusion, the exclusion eliminates coverage for "any act committed by ... an insured with intent to cause ... *injury arising out of defamation.*" We believe that the most reasonable interpretation of this clause is the one Selective champions: coverage for injuries arising from defamation claims is excluded when the insured intends to cause that injury. Accordingly, if the Terex complaint *only* permits Terex to recover upon proof that Fuisz specifically intended to cause the company injury, then Selective has no duty to defend Fuisz. In other words, because the Selective policies do not cover an insured's acts done with intent to cause injury, Selective has no duty to defend Fuisz if all of Terex's claims require Terex to prove that Fuisz intentionally caused injury.[2]

█ For this reason, as Selective properly conceded at oral argument, its case with regard to the intentional acts exclusion rises or falls on whether the Terex complaint alleges only causes of action based on common-law malice or whether the complaint also alleges causes of action based on "actual malice" under *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The intentional acts exclusion eliminates coverage and so any duty to defend if the Terex complaint *only* alleges defamation based on common-law malice, which is defined in the context of defamation as "behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made." *Gazette, Inc. v. Harris,* 229 Va. 1, 325 S.E.2d 713, 727, *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643, *and cert. denied,* 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 653 (1985); *see*

---

**2.** The distinction between "intent to injure" and "intent to defame" is the source of much controversy between the parties in this case. Why they regard it as so critical is unclear. No published opinion appears to have discussed this distinction and it seems to us to be largely a question of semantics. It is difficult to imagine how an individual could intend to defame someone without also intending to cause that person injury. Conversely, if the defamation itself is unintentional, so too must the resulting injury be unintentional.

*also Oberbroeckling v. Lyle*, 234 Va. 373, 362 S.E.2d 682, 686 (1987). On the other hand, as Selective concedes, the intentional acts exclusion does not bar coverage if the Terex complaint contains causes of action based on actual malice. This is so because actual or *New York Times* malice, unlike common-law malice, does not require proof of ill-will. Rather, all that is required for recovery is proof that the statement was made " 'with reckless disregard of whether it was false or not.' " *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 362 S.E.2d 32, 35 (1987) (quoting *New York Times*, 376 U.S. at 280, 84 S.Ct. at 726), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1997, 100 L.Ed.2d 228 (1988).

■ Examination of the Terex complaint reveals that it is permeated with allegations that Fuisz acted intentionally—with personal spite and ill-will—to defame Terex. For example, the complaint alleges that Fuisz "embarked on a scheme," conducted a "smear campaign," pursued a "vendetta," engaged in "malicious conduct" and made "repeated" false statements, all with the intent to injure Terex. In each of the four causes of action against Fuisz, Terex specifically reiterates that Fuisz "falsely," "knowingly" and "maliciously" defamed Terex. Thus, there is no question that Terex has alleged defamation claims based on common-law malice—claims that are not covered by the Selective policies because of the intentional acts exclusion.

■ The remaining question is whether the Terex complaint also alleges claims of actual or *New York Times* malice. It clearly does. Although not as prevalent as the allegations of common-law malice, Terex also repeatedly alleges throughout the complaint that "Fuisz knew [his statements] were false or *failed to take the proper steps to ascertain their accuracy* and instead published the statements *with reckless disregard as to whether they were true or false, demonstrating actual malice."* (Emphasis added.) Additionally, in each of the four causes of action directed at Fuisz, Terex specifically reiterates that Fuisz "was motivated by *actual malice* " and "published the statements with *reckless* disregard as to whether they were true or false." (Emphasis added.) In sum, although Terex clearly has alleged causes of action based on a knowing falsehood with an intent to injure, or common-law malice, Terex has alternatively alleged that Fuisz acted with actual malice by recklessly disregarding the falsehood of his statements.

■ Notwithstanding Terex's repeated allegations that Fuisz "willfully intended to injure," by also pleading that Fuisz acted with actual malice Terex has left open the possibility of another avenue of recovery if it is unable to establish Fuisz's intent to harm Terex's reputation. If the evidence at trial fails to establish that Fuisz intentionally harmed Terex, the complaint permits Terex nonetheless to prevail on its claims by proving that Fuisz intended no harm, but acted with reckless disregard for the falsity of his statements.[3] Selective concedes that the in-

---

**3.** There also exists the possibility that the complaint could be read to state a claim of negligent defamation despite the fact that Terex does not specifically allege that Fuisz acted negligently. On several occasions, the Supreme Court of Virginia has held that negligent defamation is subsumed in proof of intentional defamation. *See, e.g., Lipscomb*, 362 S.E.2d at 37–38; *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 334 S.E.2d 846, 853 (1985); *Harris*, 325 S.E.2d at 727. For example, in *Lipscomb* the court concluded that although the evidence was insufficient to sustain the jury's finding of *New York Times* malice and the issue of negligent defamation had not been submitted to the jury, the jury's compensatory damage award would be upheld because it was supported by evidence of negligent defamation, which had been subsumed in the jury's finding of *New York Times* malice. 362 S.E.2d at 37–38, 42. Moreover, in *Ellington*, where the jury had made specific findings of both common-law malice and *New York Times* malice, the Virginia Supreme Court held that the trial court's failure to instruct the jury on negligent defamation was error. 334 S.E.2d at 853 (error held harmless because plaintiff had not requested instruction). Of course, we express no opinion as to whether a district court in the District of Columbia would construe the Terex complaint to contain a cause of action for negligent defamation. *But see Washington v. State Farm Fire & Casualty Co.*, 629 A.2d 24, 27 n. 8 (D.C.1993) (cause of action for negligent defamation recognized in the District of Columbia); *Sigal Constr. Corp. v. Stanbury*, 586 A.2d 1204, 1208 (D.C. 1991) (noting that "there are few discernible differences between Virginia and District of Columbia defamation law"). We merely recognize this possibility as further support for the conclusion that the Terex complaint cannot be read as alleging only claims of defamation based on common-law malice.

tentional acts exclusion does not apply to such a claim. Furthermore, where both covered and excluded acts are alleged, the duty to defend attaches. *See Parker,* 278 S.E.2d at 804. *Accord Reisen,* 302 S.E.2d at 531 ("[t]he insurer is relieved of a duty to defend only when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations" (emphasis in original)).

Our conclusion is consistent with that of most courts considering similar questions.[4] Of course, the policy language and the allegations of the underlying complaint differ markedly from case to case. However, where the underlying complaint alleges that the insured engaged in defamation based on common-law malice, *i.e.* inspired by spite or ill-will, *and* defamation without any specific intent or defamation based on actual or *New York Times* malice, other courts have held that the insurer does owe a duty to defend notwithstanding an intentional or knowing acts exclusion. *See, e.g., EEOC v. Southern Publishing Co.,* 894 F.2d 785, 790 (5th Cir. 1990) (applying Mississippi law); *Alfa Mut. Ins. Co. v. Morrison,* 613 So.2d 381, 382 (Ala.1993); *St. Paul Ins. Co. of Ill. v. Landau, Omahana & Kopka, Ltd.,* 246 Ill.App.3d 852, 189 Ill.Dec. 217, 221–22, 619 N.E.2d 1266, 1270–71 (1993); *United Servs. Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 517 A.2d

982, 989 (1986), *appeal denied,* 515 Pa. 600, 528 A.2d 957 (1987); *Greater Palm Beach Symphony Ass'n, Inc. v. Hughes,* 441 So.2d 1171, 1172 (Fla.Dist.Ct.App.1983). *See also Safeguard Scientifics, Inc. v. Liberty Mutual Ins. Co.,* 766 F.Supp. 324, 330 (E.D.Pa.1991) (holding that although complaint only alleged "intentional slander" insured should not be denied coverage on basis of intentional acts exclusion because complaint could be amended to conform to proof at trial of lesser intent), *aff'd in part and rev'd in part,* 961 F.2d 209 (3d Cir.1992).

At this stage in the proceedings, we need simply inquire whether the complaint states a cause of action that could potentially result in liability based on a less culpable state of mind than specific intent to harm reputation. *Obenshain,* 245 S.E.2d at 249. Since the defamation claims against Fuisz set forth in the Terex complaint alternatively assert that he acted with recklessness and actual malice, there is a significant possibility that Fuisz may ultimately be held liable for defamation based on a lesser standard of culpability than common-law malice. Thus, Selective has not met its burden of showing that the intentional acts exclusion eliminates its duty to defend here.[5]

## IV.

The other exclusion that Selective relies on is the business exclusion. The policies pro-

---

4. Indeed, in the only case that Selective relies on that is clearly contrary, the court seems to have simply misread the complaint, not recognizing that it alleged the insured made defamatory statements not only in "bad faith, with malice" but also "with reckless and wanton disregard" for the plaintiff's rights. *See Federal Ins. Co. v. Applestein,* 377 So.2d 229, 230 (Fla.Dist.Ct.App. 1979) (court acknowledges that intentional acts exclusion does not eliminate coverage unless complaint only alleges statements were made with specific intent to harm the slandered party, but fails to apply this principle). The other defamation cases upon which Selective relies involved *only* allegations that the insured defamed "maliciously, wrongfully and with the willful intent to injure," *Brandstetter v. USAA Casualty Ins. Co.,* 163 A.D.2d 349, 558 N.Y.S.2d 562, 563 (1990), *appeal dismissed,* 78 N.Y.2d 1027, 576 N.Y.S.2d 208, 582 N.E.2d 591 (1991), "with malicious intentions to do damage to the injured party," *Continental Casualty Co. v. Schaubel,* 380 So.2d 483, 484 (Fla. Dist. Ct.App.1980), *cert. denied,* 389 So.2d 1114 (Fla.1980), and "falsely, willfully and maliciously with intent to in-

jure...." *Shapiro v. Glens Falls Ins. Co.,* 39 N.Y.2d 204, 383 N.Y.S.2d 263, 264, 347 N.E.2d 624, 626 (1976). There were no allegations of actual malice, recklessness or negligence in those cases.

5. Selective also maintains that the public policy of Virginia, which assertedly prohibits individuals from obtaining insurance for actions taken "with the specific intent to cause harm," *Atlantic Permanent Fed. Sav. and Loan Ass'n v. American Casualty Co. of Reading, Pa.,* 839 F.2d 212, 217 (4th Cir.), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988), precludes coverage here. Recently we refused to find any such "general public policy in Virginia" absent "a clear and dominant articulation of that policy by the Commonwealth herself." *St. Paul Fire & Marine Ins. Co. v. Jacobson,* 48 F.3d 778, 783 (4th Cir.1995). Of course, even if there was such an articulation of public policy, it would not preclude coverage here since the Terex complaint alleges Fuisz committed not just intentional acts, but also reckless ones.

vide no coverage for personal injury "arising out of or in connection with a business engaged in by an insured. . . ." Business is defined to include "trade, profession, occupation or the continuing of an activity with monetary gain or the hope or expectation of monetary gain."[6] According to the Terex complaint, Fuisz is the owner and president of Fuisz Technologies, Ltd., Inc. (Fuisz Technologies) and Folkon, Ltd., Inc. (Folkon). Therefore, applying the Selective policy definition of business, in order to exclude coverage the Terex complaint would have to assert that Fuisz's statements arose out of or were made in connection with a "continuing" professional relationship between Fuisz, Fuisz Technologies or Folkon on one hand, and Terex on the other. In the alternative, the Terex complaint would need to allege that the statements were made with or arose out of "the hope or expectation of monetary gain."

▆▆ Terex's only express allegation within its four causes of action against Fuisz that even indirectly references Fuisz's businesses states:

> Fuisz's statements . . . falsely claim that plaintiffs supplied military equipment to Iraq, including mobile scud missile launchers, and portray plaintiffs as criminals who flagrantly violated the laws of the United States.

Only a strained reading of this language would suggest that Fuisz's statements arose out of or were related to a business relationship between Fuisz and Terex. Moreover, there is nothing in the allegation quoted above, nor in any other portion of Terex's claims, to indicate that the statements were made in "hope or expectation of monetary gain." In any event, Terex's four claims against Fuisz—none of which reference Fuisz

Technologies or Folkon—certainly do not "clearly and unambiguously" indicate that Fuisz's statements were related to his businesses or to monetary gain. *Floyd,* 427 S.E.2d at 196. Rather, these claims leave open the significant possibility that Fuisz made the statements for purely personal, non-monetary reasons.

If we expand our inquiry to the entire Terex complaint and all 134 allegations contained therein—which are incorporated by reference into the four causes of action—our conclusion is no different. It is difficult to see how Fuisz's allegedly vindictive behavior can be construed as involving any existing professional relationship or any possible monetary gain. At the time Fuisz allegedly slandered Terex, Terex had long since ended any business relationship it might have had with Fuisz, and had made it clear that it would *not* do business with Fuisz. In fact, it is this refusal to conduct business with Fuisz that the Terex complaint alleges was the motive behind Fuisz's retaliatory statements. As characterized in the Terex complaint, Fuisz made the allegedly defamatory statements as part of a personal "vendetta" brought about "[a]s a result of, and in retaliation for Terex's determination not to enter into a business arrangement with him. . . ." If anything, Fuisz's actions made certain that Terex would absolutely never do business with him, thus negating any possibility of monetary gain.

## V.

In conclusion, neither the intentional acts exception nor the business exclusion clearly bars coverage for all claims made against Fuisz in the Terex complaint. Accordingly, with respect to Selective's duty to defend, we reverse the district court's order and remand

---

**6.** We note that this language is somewhat different from the more common business exclusion, which eliminates coverage for "injury . . . arising out of business pursuits of any insured" without providing any definition of "business." *See, e.g., Virginia Mut. Ins. Co. v. Hagy,* 232 Va. 472, 352 S.E.2d 316, 317 (1987). This typical business exclusion has been interpreted to require proof that the "business pursuit" was (1) continuous *and* (2) conducted with a profit motive. *Id.* 352 S.E.2d at 318. The only business exclusion case upon which Selective relies, *Industrial Indem.*

*Co. v. Goettl,* 138 Ariz. 315, 674 P.2d 869 (App. 1983), is distinguishable on this ground. Moreover, the unremarkable principle for which Selective cites *Goettl*—that the business pursuit exclusion "precludes coverage for injuries arising out of a business pursuit regardless of when the insured engaged in such activity," *id.* 674 P.2d at 872—is of little assistance to Selective here. As we shall explain, *infra,* the allegations of the Terex complaint do not clearly allege injuries arising out of Fuisz's business activities *at any time.*

the case with directions to enter summary judgment in favor of Fuisz and to declare that Selective must provide him with a defense to the Terex complaint. The district court also awarded summary judgment in favor of Selective with regard to its duty to indemnify Fuisz, presumably on the theory that, without a duty to defend, there can be no duty to indemnify. However, the issue of whether Selective must indemnify Fuisz cannot be resolved on the record at this juncture. Resolution of that issue must await the disposition of the underlying controversy between Terex and Fuisz. Thus, as to Selective's duty to indemnify Fuisz, we express no opinion, but simply vacate the district court's order.

*REVERSED IN PART, VACATED IN PART, AND REMANDED.*

NIEMEYER, Circuit Judge, dissenting:

In determining whether Selective Insurance Company of America is required under its insurance policy to provide a defense to a law suit filed against Richard Fuisz, its insured, we are obliged to read the law suit and determine whether the conduct alleged there is of the kind that Selective Insurance agreed to cover. Under Virginia law, if the complaint alleges "facts and circumstances, some of which would, if proved, fall within the risk covered by the policy," the insurance company must provide a defense. *Parker v. Hartford Fire Ins. Co.*, 222 Va. 33, 278 S.E.2d 803, 804 (1981) (internal citations omitted). Since I cannot conclude that *any* of the "facts and circumstances" alleged could give rise to liability that would be covered by Selective Insurance's policy, I would affirm the district court's decision reaching the same conclusion.

The insurance policy issued to Fuisz by Selective Insurance excludes coverage for any liability which arises from intentional acts. The policy states that Selective Insurance will "not cover any *act* committed by . . . an insured with intent to cause . . . injury" (emphasis added). Thus, irrespective of how the complaint frames its causes of action, coverage is determined by scrutinizing the nature of the *conduct* alleged, and if the alleged conduct consists solely of acts com-

mitted by the insured *with the intent* to cause injury to another, coverage is not provided. This form of exclusion draws on universal principles of public policy against insuring deliberate conduct which is undertaken with the intent to injure another. *See Atlantic Permanent Fed. Sav. & Loan Ass'n v. American Casualty Co. of Reading, Pa.*, 839 F.2d 212, 217 (4th Cir.1988) (noting that it is against the public policy of Virginia to provide insurance coverage "where the insured acted with the specific intent to cause harm"). Otherwise, insurance could be purchased to cover the adverse effects on the insured of his robbing a bank or pursuing a fraudulent scheme.

In this case, the only possible reading of the underlying complaint against Fuisz is that it alleges deliberate conduct intended to injure Terex Corporation. Specifically, Terex Corporation demands that Fuisz answer for conduct deliberately aimed at damaging Terex's business reputation by accusing it of illegal and unpatriotic connections with Iraq. The action, denominated as a common law claim for libel and slander, summarizes the alleged conduct as "*a scheme and plan to injure* [Terex] by publicly disseminating false accusations designed to tarnish [its] good name and reputation in the business community" (emphasis added). A "scheme and plan" must, by definition, be intentional.

The historical facts in the complaint describe the development of Fuisz's "scheme and plan" in detail. First, the complaint relates how Fuisz endeavored, unsuccessfully, to act as Terex's sales representative in Saudi Arabia. It alleges that Fuisz thereupon "determined to retaliate against [Terex] for the loss of a business opportunity" and engaged in a "vendetta" against Terex. In furtherance of his scheme, Fuisz is alleged to have contacted journalists to spread false information as part of a "smear campaign" against Terex, "falsely linking [Terex] to the sale of military equipment, including scud missile launching equipment, to Iraq," and implying that Terex aided Saddam Hussein in firing dozens of scud missiles at Israel and Saudi Arabia. The complaint chronicles Fuisz's initial efforts to contact congressional committees and "responsible and ethical

members of the media" to spread this false information. When nothing was found to support the charges, the complaint describes how Fuisz then turned to less scrupulous journalists who specialized in "sensationalistic exposes" to spread the information and ultimately get it into the general press. Terex demanded that Fuisz retract the false publications but Fuisz refused to do so. Summarizing Fuisz's deliberate intent to injure Terex, the complaint alleges, "in publishing these false and defamatory statements set forth above, Fuisz was motivated by actual malice and wrongfully and willfully intended to injure plaintiffs."

The *conduct* which is described in the complaint can only be characterized as deliberate. There is not a single series of "facts and circumstances" in the complaint which, if true, could have been pursued accidentally or recklessly.

In concluding that the complaint also alleges "reckless" conduct—which Selective Insurance's policy would not exclude—the majority opinion relies on the single allegation made with respect to each defamatory publication that "Fuisz knew that the statements were false, or published the statements *with reckless disregard as to whether they were true or false*" (emphasis added). From this the majority concludes that even if "the evidence at trial fails to establish that Fuisz intentionally harmed Terex, the complaint permits Terex nonetheless to prevail on its claims by proving that Fuisz intended no harm, but acted with reckless disregard for the falsity of his statements." Op. at 244. But even if Terex could theoretically recover if Fuisz had acted without intent to injure Terex, the complaint never suggests such a possibility. Indeed, if the facts alleged are true, which we must assume in this analysis, it is *impossible* that Fuisz acted without intent to injure Terex. Moreover, whether Fuisz spread information knowing it to be false or spread it while recklessly indifferent to its truth is *irrelevant* to the question of whether the injury caused was deliberately inflicted. On that question, the complaint is not ambiguous. Terex alleges that Fuisz purposely spread false information and that Fuisz did so with the single-minded intent of injuring Terex as a "vendetta" for failing to enter into a business relationship with him. The complaint alleges *only one type of conduct*—a vendetta pursued intentionally to injure—and it never wavers from the accusation that Fuisz's activities were precalculated, planned, and deliberate, and thus that Fuisz "wrongfully and willfully intended" to injure Terex. If the entire course of conduct imputed to Fuisz was motivated by vendetta and pursued over a long period in conspiracy with others, it cannot follow that the injury Fuisz caused was unintended.

It is just such intentional conduct that is excluded from coverage in Selective Insurance's policy issued to Fuisz, and must be excluded from any insurance policy in Virginia. Insurance cannot assume responsibility for covering the adverse effects of a person who carries out a vendetta against a company in retaliation for failing to award him a business contract. Because the conduct alleged by Terex in the underlying complaint in this case can only be characterized as acts committed by Fuisz *with the intent to cause injury*, I would affirm the judgment of the district court. I therefore dissent.