**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CAROVA CORPORATION; OCEAN SANDS
CORPORATION,

*Plaintiffs-Appellants,*

v.

UNITED STATES FIDELITY &
GUARANTY COMPANY,

*Defendant-Appellee.*

No. 00-1684

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CA-99-1573-2)

Argued: January 23, 2001

Decided: March 23, 2001

Before NIEMEYER and MOTZ, Circuit Judges, and
David A. FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Charles William Best, Jr., CHARLES W. BEST JR.,
P.C., Norfolk, Virginia, for Appellants. Frank Winston, Jr., SHAW
PITTMAN, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

This case requires us to decide whether United States Fidelity and Guaranty Company ("USF&G") was obliged to defend its insured in a lawsuit arising out of the insured's maintenance of a trash dump. Following a bench trial, the district court concluded that the policy provided no coverage for the claims asserted against the insured, and we affirm.

Carova Corporation and Ocean Sands Corporation, both Virginia corporations, are joint venturers in Ocean Carova ("Carova"), which owns real property located in Currituck County, North Carolina. Carova operated a trash dump on its property and authorized motor vehicles to use a pedestrian right-of-way for access to the dump. The owner of a neighboring property, Swan Island Properties, Inc. ("Swan Island"), which was developing its property for resale in lots, sued Carova for damages to Swan Island's property caused by the presence of the dump and by trash blowing from the dump onto Swan Island's property. In its suit against Carova, Swan Island alleged: (1) that Carova knowingly permitted use of its pedestrian easement for use by motor vehicle traffic thereby damaging the easement; (2) that operation of a trash dump by Carova on its property near Swan Island's property line created a visual impairment that "unreasonably interfered" with Swan Island's ability to sell lots; and (3) that trash from the dump had blown from Carova's property onto Swan Island's property. Swan Island filed suits against Carova in both state and federal court.

Carova tendered the defense of these suits to its insurance company, USF&G, but USF&G denied coverage because the claims in the suits did not assert "property damage," as defined by the policy, and because a pollution exclusion applied, barring coverage. After Carova defended the suits at its own expense, eventually settling with Swan

Island for $13,000, Carova instituted this action against USF&G for a declaratory judgment that USF&G was obliged to provide a defense and for a money judgment for reimbursement of its costs of defense and settlement.

Following a bench trial, the district court ruled in favor of USF&G, concluding:

> From the evidence presented at trial and in the record before the Court, it is clear to the Court that USF&G properly found that the underlying complaints filed by Swan Island do not allege "property damage" as defined by the policies. Therefore, USF&G had no obligation to provide coverage to Carova for the claims in the Swan Island complaints. It is equally clear to the Court that even if there was "property damage," USF&G correctly invoked the contract's pollution exemption when it denied Carova's request for coverage.

This appeal followed.

The policy in question provides that USF&G "will pay those sums that [Carova] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages." The policy defines "property damage" to "mean[ ] [p]hysical injury to tangible property, including all resulting loss of that property . . . or [l]oss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

USF&G directs us to two exclusions in the policy that may be applicable. Under the first, the policy excludes coverage of property damage that is "expected or intended from the standpoint of the insured." And under the second, the policy excludes property damage caused by pollution, specifically damage that "aris[es] out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants [a]t or from any premises, site or location which is or was at any time owned or occupied by . . . [Carova]."

A "pollutant" is defined by the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Under Virginia law, which is applicable, the determination of whether an insurance company has a duty to defend must be based on "(1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." *Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238, 242 (4th Cir. 1995).

The allegations of the complaints that Swan Island filed against Carova may be grouped under three basic claims. First, Swan Island contended that Carova permitted others to use the pedestrian walkway easement located at the border of the Carova land for motor vehicular traffic even though the easement had been dedicated for pedestrian use only. The Swan Island complaint charged that Carova "knowingly allowed" the pedestrian walkway easement to be used in this fashion, thereby damaging the easement. Second, Swan Island claimed that Carova's maintenance of the dump on its property created a nuisance that decreased the value of Swan Island's property. And third, "household trash was blown from Carova land onto the Swan Island land," thereby impairing Swan Island's ability to sell its lots.

The first two claims asserted by Swan Island are clearly based on deliberate conduct. The allegation that Carova improperly allowed vehicular traffic to use an easement was specifically alleged to have been done "knowingly." And Carova's operation of a dump, alleged by Swan Island to create a nuisance, was obviously deliberate. Accordingly, we believe that both of these claims are excluded from coverage because each claimed damages that were "expected or intended from the standpoint of the insured."

The third claim, that trash blew onto Swan Island's property, is also arguably based on an occurrence that was "expected" from Carova's standpoint. But even if this claim could be construed as falling under Swan Island's general allegations of negligence, there still would be no coverage because the trash caused no property damage as that term is defined by the policy. The policy defines property

damage as "physical injury to tangible property, including all resulting loss of that property." The allegations in the complaint concern trash that could easily be removed, and no allegation suggests that it damaged the underlying property. Moreover, the allegations fail to indicate how the windblown trash caused damage to the property based on the policy's alternative definition of "loss of use of tangible property that is not physically injured." Although Swan Island could allege a decline in value resulting from the existence of the dump itself on the adjacent property, it could not make a similar claim for blown trash that could easily be removed.

Accordingly, without considering whether the pollution exclusion applies, we agree with the district court that the policy did not cover the risks described in Swan Island lawsuits.

The judgment of the district court is affirmed.

*AFFIRMED*