## Richmond

ATLANTIC LIFE INSURANCE COMPANY V. MATILDA GREENFIELD, AD-
MINISTRATRIX OF THE ESTATE OF GEORGE MORGAN, DECEASED.

December 2, 1957.

Record No. 4703.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*Richard Newman* and *A. B. Scott* (*Robert W. Corstapheny; New-
man, Allaun & Bateman; Christian, Marks, Scott & Spicer,* on brief),
for the plaintiff in error.

*Henry D. Kashouty* (*Eugene M. Jordan,* on brief), for the de-
fendant in error.

EGGLESTON, J., delivered the opinion of the court.

Matilda Greenfield, administratrix of the estate of George Mor-
gan, deceased, filed a motion for judgment against Atlantic Life In-
surance Company to recover the sum of $2,000 claimed to be due
under the terms of a policy issued by the Insurance Company on

the life of George Morgan. It was alleged that under the terms of the policy the Insurance Company had agreed to pay to Sallie Parker the amount claimed in the event of Morgan's "loss of life;" that Sallie Parker, the named beneficiary, had been convicted and sentenced to prison for the felonious killing of the insured, Morgan, and that, therefore, the amount due under the policy was payable to the plaintiff administratrix.

The Insurance Company filed an answer admitting the issuance of the policy and the death of the insured in the manner alleged by the plaintiff, but denying that it was obligated to pay the amount sued for because, it said, under the "EXCLUSIONS AND LIMITATIONS" clause of the policy it is expressly stipulated that death or "loss resulting from * * * illegal acts of any person," such as is the case here, is not insured against.

By agreement of the parties the matter was tried by the lower court without a jury and resulted in a judgment for the plaintiff against the Insurance Company for the amount claimed. We granted the Insurance Company a writ of error. The sole question presented is whether the death of the insured, in the manner stated, was a risk excluded under the terms of the policy.

The facts are not in dispute. On March 28, 1955, the Insurance Company wrote an "Accident and Sickness" policy on George Morgan, the named insured, for the sum of $2,000. The indemnity for loss of life was payable to Sallie Parker as the named beneficiary. While the policy was in effect Sallie Parker killed Morgan and shortly thereafter was convicted of voluntary manslaughter and sentenced to prison for the killing. It was conceded at the trial of the suit on the policy that because of the illegal act of Sallie Parker, the named beneficiary, the proceeds of the policy, if due under its provisions to anyone, are payable to Morgan's personal representative.

The policy contains these pertinent provisions:

"ATLANTIC LIFE INSURANCE COMPANY * * * Hereby insures the person named in the Policy Schedule as the Insured against *loss*[1] as specified herein, (1) resulting directly and independently of all other causes from accidental bodily injuries (herein called such injuries) sustained while this policy is in force and (2) from disability caused by sickness or such injuries while this

---

[1] Emphasis is added here and in the subsequent quotations from the policy.

policy is in force, subject to all the provisions, exclusions and conditions of the policy, and agrees to pay:

\*  \*  \*  \*  \*  \*  \*

"III. THE PRINCIPAL SUM INDEMNITY for death due under Part III, '*Loss* of Life by Accident.'

\*  \*  \*  \*  \*  \*  \*

"PART III—*LOSS* OF LIFE BY ACCIDENT. If within ninety (90) days after the date of the accident irrespective of total disability, such injuries shall result in the death of the Insured, the Company will pay the principal sum specified in the Policy Schedule; \* \* \* .

\*  \*  \*  \*  \*  \*  \*

"PART V—EXCLUSIONS AND LIMITATIONS. \* \* \* This policy does not cover disability or *loss* resulting from taking poison, inhaling gas (voluntary or otherwise), or *illegal acts of any person or persons*, or participation in an assault or felony."

The question presented is whether the death of the insured in the manner stated was a "loss resulting from \* \* \* illegal acts of any person" which was excluded from coverage under PART V of the policy. It is the contention of the plaintiff administratrix that the death of the insured was not a "loss" within the meaning of the exclusion clause, while the Insurance Company takes the opposite view.

The trial court in a written opinion held that "the word 'loss' is ambiguous and being ambiguous is to be strongly construed [against the Insurance Company] and does not cover death."

We do not agree with that view. We see nothing ambiguous, doubtful, or uncertain in the use of the word "loss" in the exclusion clause. The word "loss" is a word of common use and its meaning is plain and easily understood. It is commonly used to denote the death of a person, and such an event is frequently referred to as a "loss" to his family and his friends.

Webster's New International Dictionary, 2d Ed. (1935), defines the word "loss" as follows:

"1. State or fact of being lost or destroyed; \* \* \*

"7. *Insurance.* Death, injury, destruction, or damage in such a manner as to charge the insurer with a liability under the terms of the policy; * * * ."

Among the definitions of the word found in American College Dictionary, Random House, 1948 Ed., are these:

"4. A being deprived of * * * .

"11. *Insurance* a. Occurrence of a risk, as death or damage to property, covered by a contract of insurance so as to result in insured liability."

Bouvier's Law Dictionary, 14th Ed., defines the word thus:

"LOSS. In Insurance. The destruction of or damage to the insured subject by the perils insured against, according to the express provisions and construction of the contract. * * *

"Loss under a life policy is simply the death of the subject by a cause the risk of which is not expressly excepted in the policy, * * * ."

Moreover, it is perfectly plain from a reading of the policy as a whole that the word "loss" is used in a general sense to cover any instance where the Insurance Company will be called upon to pay under the provisions of the policy. The very first line of the policy "insures the person named in the Policy Schedule as the Insured, against *loss* as specified herein." Then follow four provisions for the payment of indemnity for losses insured against. Among these is the promise to pay "INDEMNITY for death due under Part III, '*Loss* of Life by Accident.' " This clause is the basis of the plaintiff's claim to recover the proceeds of the policy.

Under "GENERAL PROVISIONS" we find these stipulations wherein the word "loss" is similarly used in a general sense:

"TIME LIMIT ON CERTAIN DEFENSES: (a) After three years from the date of issue of this policy, no misstatements * * * made by the applicant * * * shall be used to void the policy or to deny a claim for *loss* incurred * * * .

"(b) No claim for *loss* incurred * * * commencing after three years from the date of issue of this policy shall be reduced or denied * * * .

"NOTICE OF CLAIM: Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any *loss* covered by the policy, * * * .

"CLAIM FORMS: The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of *loss.* * * *

"PROOFS OF LOSS: Written proof of *loss* must be furnished to the Company * * * .

"TIME OF PAYMENT OF CLAIMS: Indemnities payable under this policy for any *loss* other than *loss* for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such *loss*. * * *

"PAYMENT OF CLAIMS: Indemnity for *loss* of life will be payable in accordance with the beneficiary designation and the provisions respecting such payment * * * ."

It is perfectly plain then that the word "loss," as frequently used throughout the policy, includes the death of the insured. Indeed, the very basis of the plaintiff's claim is that such death was a "loss" which was insured against by the first line of the policy. If it is plain that "loss" means loss of life or death under the insuring clause, as we think it does, it is equally plain that it means loss of life or death under the exclusion clause.

The conclusion which we have thus reached is in accord with the holdings in *Maclin* v. *Continental Casualty Co.* (172 Tenn. 244, 111 S. W. 2d 1019), and *Continental Casualty Co.* v. *Meadows* (242 Ala. 476, 7 So. 2d 29), involving similar policy provisions.

As was aptly said in the *Maclin* case, *supra*, "The word 'loss' used in the exceptions must be accorded the breadth of meaning as is specifically given it in the insuring clause of the contract." (111 S. W. 2d, at page 1019.)

None of the cases cited by the plaintiff touches upon the precise point with which we are here concerned.

Since it is undisputed that the death of the insured resulted from the illegal act of another, we hold that it was a loss which was excluded under the terms of the policy and for which no recovery can be had. Accordingly, the judgment will be reversed and a final judgment will be here entered for the defendant Insurance Company.

*Reversed and final judgment.*