Filed:  February 24, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

No. 96-2722
(CA-96-949-A)
_____

Gates, Hudson & Associates, Incorporated,

                              Plaintiff - Appellant,

         versus

The Federal Insurance Company,

                              Defendant - Appellee.

_____

O R D E R

_____

        The Court amends its opinion filed October 9, 1997, as
follows:

        On the cover sheet, section 1 -- the status is changed from
UNPUBLISHED to "PUBLISHED."

        On the cover sheet, section 6 -- the decision line is changed
to read "Affirmed by published opinion.  Senior Judge Michael wrote
the opinion, in which Judge Widener and Judge Niemeyer joined."

        On page 2, section 1 -- the reference to use of unpublished
opinions as precedent is deleted.

On page 2, beginning of opinion -- "PER CURIAM" is changed to read "M(CHAEL, Senior District Judge."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GATES, HUDSON & ASSOCIATES,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.                                              No. 96-2722

THE FEDERAL INSURANCE COMPANY,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-96-949-A)

Argued: June 5, 1997

Decided: October 9, 1997

Before WIDENER and NIEMEYER, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Michael wrote
the opinion, in which Judge Widener and Judge Niemeyer
joined.

_____

**COUNSEL**

**ARGUED:** Michael Letaw Shor, SWIDLER & BERLIN, Washing-
ton, D.C., for Appellant. Jonathan Adrian Constine, HOGAN &
HARTSON, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:**
Peter Barnes, SWIDLER & BERLIN, Washington, D.C., for Appel-
lant.

_____

_____

**OPINION**

MICHAEL, Senior District Judge:

I. Jurisdiction

Gates, Hudson & Associates, Inc. (GHA) is a Virginia corporation with its principal place of business in Virginia. Defendant-Appellee Federal Insurance Company ("Federal") is an Indiana corporation with its principal place of business in New Jersey. Because the parties had diverse citizenship and the amount in controversy exceeded the statutory requirement, GHA brought this matter in the District Court of the Eastern District of Virginia, pursuant to 28 U.S.C. § 1331(a)(1). This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

II. Introduction

This case arises out of a disagreement as to the coverage provided by an insurance policy issued by Federal to GHA. GHA purchased a Commercial Excess Umbrella Policy ("Policy") from Federal in May 1994. The Policy insured GHA for "damages when liability is imposed on the insured [GHA] by law ... because of personal injury ... to which this coverage applies, caused by an offense committed during the policy period." Joint Appendix (JA) at 58 (emphasis in original). Further, Federal obligated itself to "assume charge of the settlement or defense of any claim or suit against [GHA]" when "damages are sought for bodily injury, personal injury, property damage, or advertising injury covered by this policy and to which no ... other insurance applies." JA at 59 (emphasis in original). "Personal injury" was defined to include "humiliation or discrimination." The policy contained various exclusions; the one at issue in this litigation ("the employment exclusion") stated: "This policy will NOT apply ... to any liability of [GHA] arising out of injury of an employee in the course of employment by you ... whether [GHA] may be liable as an employer or in any other capacity." JA at 62, 64 (emphasis added).

2

During the period of coverage under the Policy, a former employee of GHA, Valorie Brown, filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that she had been subject to sexual harassment by her supervisor at GHA, subject to a pattern or practice of discrimination, and constructively discharged because of said harassment and discrimination, all in violation of Title VII, 42 U.S.C. § 2000e et seq. GHA disputed the allegations. It hired counsel and prepared a response to an Information and Records Request as ordered by the Fairfax County Human Rights Commission which, along with EEOC was conducting an investigation. Before the investigation was completed, Ms. Brown requested a "Notice of Right to Sue," halting further investigations. She then sent a draft complaint to GHA, seeking a monetary settlement. GHA conferred further with its counsel and refused such settlement. Ms. Brown did not file suit before the time for filing expired. GHA sought, beginning on March 17, 1995* and pursuant to the Policy, to induce Federal to defend or indemnify the claim. Federal refused to defend or indemnify GHA based on the employment exclusion in the policy. On July 12, 1996, GHA filed a civil action seeking a declaratory judgment that Federal had breached its contractual obligations under the Policy to defend GHA, compensatory damages for the breach, and costs. Federal moved for summary judgment claiming that it had no duty to defend GHA as a matter of law. GHA cross-moved for summary judgment claiming that, as a matter of law, Federal did indeed have a duty.

The district court found that the term "injury" was not ambiguous in the context of the policy, and that the employment exclusion relieved Federal of any obligation to defend GHA. The district court, therefore, granted Federal's motion for summary judgment, denied GHA's, and dismissed GHA's complaint with prejudice. This appeal followed. This court reviews de novo the district court's grant of summary judgment and denial of the cross motion for summary judgment. Benner v. Nationwide Mut. Ins. Co., 93 F.3d 1228, 1239-40 n.13 (4th Cir. 1996).

_____

* On March 17, 1995, Charles E. Hudson, Executive Vice President of GHA, wrote to Robert P. Moltz, President of Weaver Brothers Insurance, to ask him to alert Federal to the claims of Ms. Brown, pursuant to the Policy.

3

III. Discussion

The central issue in this case, therefore, is whether the term "injury" is ambiguous in the context of the insurance policy. Virginia courts have made clear the manner in which a court should construe a contract for insurance. The court must read the terms of the policy as part of the document as a whole, not "in isolation." Nationwide Mut. Ins. Co. v. Akers, 340 F.2d 150, 154 (4th Cir. 1965); Suggs v. Life Ins. Co. of Va., 147 S.E.2d 707, 709 (Va. 1966); Quesenberry v. Nichols, 159 S.E.2d 636, 638 (Va. 1968). Exclusions in particular are read narrowly and "are enforceable only when the exclusions `unambiguously bring the particular act or omission within its [sic] scope.'" Fuisz v. Selective Ins. Co. of America, 61 F.3d 238, 242 (4th Cir. 1995), citing Floyd v. Northern Neck Ins. Co., 427 S.E.2d 193, 196 (Va. 1993). If a term is ambiguous, Fuisz directs that the conflict be resolved in favor of the insured. Id. at 242. Ambiguity is determined from "the face of the policy" and exists if the language used "may be understood in more than one way or when it refers to two or more things at the same time." Smith v. Allstate Ins. Co., 403 S.E.2d 696, 697 (Va. 1991); see also Nationwide Mut. Ins. Co. v. Wenger, 278 S.E.2d 874, 877 (Va. 1981). A term is unambiguous only if, within its context, it is not susceptible to more than one meaning.

Common sense suggests that "injury" is a broad term encompassing many types of injury. A common sense reading of the policy at issue in this matter suggests that its use of the term "injury" does not depart from the "ordinary and accepted meaning" of the word. See Scottsdale Ins. Co. v. Glick, 397 S.E.2d 105, 108 (Va. 1990). Rather, in the context of the policy and in accordance with its ordinary meaning, "injury" in the policy encompasses the subsets of "personal injury," "bodily injury," and "advertising injury." Although "injury" is not defined by the policy, the other terms: "bodily injury," "personal injury," and "advertising injury;" are carefully defined. Throughout the policy, "injury" is used to refer to all covered injuries--bodily, personal, or advertising. When the insurer intends in the policy to limit the types of injury discussed it does so by adding qualifying words and clauses. Federal's careful delineations of specific types of injuries at other points in the policy suggest that the insurer knew how to limit the term when it desired to do so. In the absence of such qualifiers at this point in the policy, this court interprets "injury" accord-

4

ing to its plain meaning. Black's Law Dictionary defines injury as "Any wrong or damage done to another, either in his person, rights, reputation, or property." Black's Law Dictionary 785 (6th ed. 1990). Webster's Third New International Dictionary defines "injury" as "a violation of another's rights for which the law allows an action." Webster's Third New Int'l Dictionary 1164 (1976). Even the dictionary cited by appellants defines "injury" as "wrong or damage done to a person or his property, reputation or rights." Webster's II New Riverside University Dictionary 629 (1984). As Appellee aptly points out, if "personal injury" were not a subset of injury, an individual could suffer personal injury, but no injury. Such an interpretation does violence to the plain meaning of the word "injury."

Atlantic Life Insurance Co. v. Greenfield supports Appellee's position. In that case, the insurer agreed to provide insurance against "loss," including "Loss of Life by Accident." The policy excluded from coverage, however, "disability or loss resulting from ... illegal acts of any person." 100 S.E.2d 717, 719 (Va. 1957). Despite the exclusion, the insured's estate sought to recover for the insured's death by manslaughter. The trial court held that the insured was entitled to coverage because the term "loss" in the exclusion was ambiguous as to whether it included death. The Virginia Supreme Court disagreed.

> It is perfectly plain then that the word "loss" as frequently used throughout the policy, includes the death of the insured. Indeed, the very basis of the plaintiff's claim is that such death was a "loss" which was insured against by the first line of the policy. If it is plain that "loss" means loss of life or death under the insuring clause ... it is equally plain that it means loss of life or death under the exclusion clause.

Id. at 510 (emphasis added). The reasoning in Atlantic Life Ins. Co. v. Greenfield applies squarely to the case before the court. To reject the common sense definition of "injury" as appellant urges the court to do abandons not only the unambiguous meaning of the policy but would produce the anomalous result noted supra, that one could suffer "personal injury" but not "injury." The court cannot adopt the rea-

5

soning of the appellant, where such reasoning would leave the court with the anomalous result noted.

IV. Conclusion

For the reasons stated, the district court's grant of summary judgment to Federal Insurance Company is

AFFIRMED.