*81 OPINION OF THE COURT
Leonard N. Cohen, J.
Plaintiff Communications Groups, Inc. (CGI) moves to dismiss defendant Warner Communications Inc.’s (Warner) first through third counterclaims which are identical to defendant’s second through fourth affirmative defenses, respectively, pursuant to CPLR 3211 (a) (1), (7) and (b).
This action arises out of an alleged breach of a written agreement dated July 18, 1986 for the licensing, installation and servicing of a certain computer software package (the Agreement). Subsequently, the parties entered into two subcontracts for additional software and related hardware. As per the Agreement, defendant paid 50% of the amount due upon signing the Agreement. The remaining 50% was to be paid upon installation of the software. It is undisputed that defendant has not paid this remaining amount due under the Agreement.
The complaint, dated October 23, 1987, sets forth three causes of action for breach of contract to recover payment in the total amount of $16,650 still due and owing from defendant to plaintiff. Defendant does not dispute nonpayment, but defendant’s answer asserts four affirmative defenses and three counterclaims: the second affirmative defense/first counterclaim (first counterclaim) claims breach of an implied warranty of fitness of the computer software for defendant’s specified known purposes; the third affirmative defense/second counterclaim (second counterclaim) claims breach of an express and/or implied warranty of merchantability of the software system and the good working order of its system and repair services; and the fourth affirmative defense/third counterclaim (third counterclaim) claims breach of contract in failing to provide support services to keep the system operational and in good working order.
As to the first and second counterclaims alleging implied warranties of merchantability and fitness for a specified known business purpose, the movant, CGI, contends that the Agreement provided for a software system or package which was neither for a tangible and movable product or goods nor a transaction for a sale or lease of either services or goods. Rather, CGI claims the Agreement was a license for computer software as an intangible service for limited use by defendant of "copyrightable information” and for the acquisition of the "abstract right” only "to listen” as with music on a record or *82 disk. As a consequence, CGI argues that since implied warranties of fitness for a particular purpose or merchantability are remedies exclusively for contracts of the sale of goods and because the Agreement herein is not such a transaction of goods, the implied warranty counterclaims lack merit and cannot be maintained either under common law or under the Uniform Commercial Code (UCC).
Moreover, movant contends that even if the contract was for a sale of goods or a lease of goods, the contract, by its terms, provides for an express disclaimer of any implied warranties of fitness and merchantability. Therefore, movant urges that the first two counterclaims should be dismissed on this ground.
As for the third counterclaim, movant characterizes this claim as a breach of express warranties of the good working order and adequate support services of the computer software. Movant contends that such express warranties are lacking under the terms of the Agreement. Movant argues that any prior or subsequent oral promises or warranties which may have been made by movant cannot be considered part of the Agreement based on the parol evidence rules under common law and the UCC. Therefore, movant contends that the third counterclaim also lacks merit and fails to state a cause of action and should be dismissed.
The threshold issue presented is whether the software computer package or system provided for under the Agreement involved a transaction of "goods” as defined under UCC 2-105 (1) to mean "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale”.
A review of the Agreement, the sole documentary and evidentiary matter submitted on these motion papers, shows that the computer software referred to therein is not defined. Nor have either of the parties in their motion papers articulated the precise form of the instant software. Software, however, is a widely used term and has several meanings. (See, University Computing Co. v Lykes-Youngstown Corp., 504 F2d 518, 527 [5th Cir 1974] [software includes programs and computer language listings]; In re Law Research Servs. v General Automation, 494 F2d 202, 204, n 3 [2d Cir 1974] [software includes magnetic cards or paper cards programmed to instruct the computer]; Corn-Share, Inc. v Computer Complex, 338 F Supp 1229 [US Dist Ct, ED Mich 1971] [software *83 refers to programs used in the computer]; see generally, Note, Computer Programs As Goods Under The UCC, 77 Mich L Rev 1149 [1979].)
Regardless of the software’s specific form or use, it seems clear that computer software, generally, is considered by the courts to be a tangible, and movable item, not merely an intangible idea or thought and therefore qualifies as a "good” under article 2 of the UCC. (RRX Indus. v Lab-Con, Inc., 772 F2d 543 [9th Cir 1985]; Chatios Sys. v National Cash Register Corp., 479 F Supp 738 [US Dist Ct, NJ 1979], affd 670 F2d 1304 [3d Cir 1982]; Triangle Underwriters v Honeywell, Inc., 457 F Supp 765 [US Dist Ct, ED NY 1978], affd in part, revd in part and remanded op other grounds 604 F2d 737 [2d Cir 1979]; see also, Note, op. cit., 77 Mich L Rev 1149.) Moreover, UCC 1-102 provides that the act shall be liberally construed and applied to promote its underlying purposes and policies.
Here, the Agreement clearly provides, in part, for the installation by CGI of its specially designed software equipment for defendant’s particular telephone and computer system, needs and purposes. This equipment is expressly listed on schedules annexed and made a part of the Agreement. Said schedules clearly reflect installation by CGI of identifiable and movable equipment such as recording, accounting and traffic analysis and optimizations, modules, buffer, directories and an operational user guide and other items. A review of the counterclaim allegations shows that a software computer system and equipment were designed for defendant’s special and unique known needs to store data relating to thousands of defendant’s monthly telephone calls and to process and print this data on defendant’s main computer frame so that defendant’s operations would prove more time and labor efficient. Although the ideas and concepts of the CGI-designed software system remained its intellectual and copyrightable property under the Agreement, the court finds in the context of the case law and the UCC that the contract terms clearly provided for a transaction of computer software equipment involving movable, tangible and identifiable products or goods and not solely intangible ideas and services and, in fact, such goods were installed by CGI for defendant’s special purposes. Therefore, the first and second counterclaims are not dismissible on the ground of an exclusive contractual intangible services transaction as urged by movant.
The next issue raised by movant is that the contractual transaction failed to constitute either a sale or lease but *84 merely was a license to use and service the software, therefore precluding defendant from relying on the common law or the UCC implied warranties of merchantability (UCC 2-314) and fitness for a particular known purpose (UCC 2-315).
The court finds that the Agreement clearly constituted a lease for the use of CGI’s goods despite the terms expressed therein of a "license to use” CGI "proprietary” software for the payment of a one-time perpetual license fee in accordance with attached pricing schedules. The Agreement, although labeled a license agreement, is clearly analogous to a lease for chattels or goods. The movant has not addressed nor presented a distinction, factually or legally, between a license to use goods from an ordinary lease to use goods. Plaintiff’s argument is based on an alleged contractual license to provide intangible services which, as hereinabove, the court rejects. Therefore, the court finds the Agreement clearly is a lease for the use of plaintiff’s goods, despite the contractual label of a "license”.
The law is clear that common-law rights exist to state a cause of action or counterclaim for breach of implied warranties of merchantability and/or fitness for a particular known purpose involving the lease of chattels or goods without reliance on the UCC. (Industralease Automated & Scientific Equip. Corp. v R. M. E. Enters., 58 AD2d 482 [2d Dept 1977]; Atlantic Tug & Equip. Co. v S & L Paving Corp., 40 AD2d 589 [4th Dept 1972]; Vander Veer v Tyrrell, 29 AD2d 255 [3d Dept 1968]; Laudisio v Amoco Oil Co., 108 Misc 2d 245 [Sup Ct, NY County 1981].) The cases cited by movant suggesting the nonexistence of common-law rights of implied warranties are inapposite as they involve the provision of contractual services as distinguished from products and goods as found herein-above.
Therefore, the defendant has sufficiently stated in its first and second counterclaims a common-law breach of implied warranties under a contractual lease of goods. However, these counterclaims allege a purchase and sale of the software products. In this regard the contract specifically provided that the CGI software was to be its sole and exclusive property and upon termination of the agreement the defendant would return the software to CGI. Thus, CGI contends the transaction was not a sale within the meaning of UCC 2-106 (UCC 2-401) as no title passed from seller to buyer for a price and therefore defendant is precluded from asserting UCC’s implied warranties.
*85 However, New York courts have liberally construed the meaning of "transaction” under UCC 2-102, choosing to analyze the underlying facts of the agreement at issue in determining whether it sufficiently resembles a sale. (In re O.P.M. Leasing Servs., 61 Bankr 596, 603 [US Dist Ct, SD NY 1986]; Uniflex, Inc. v Olivetti Corp., 86 AD2d 538, 539 [1st Dept 1982]; Barco Auto Leasing Corp. v PSI Cosmetics, 125 Misc 2d 68, 72-73 [Civ Ct 1984]; Aguiar v Harper & Row Publishers, 114 Misc 2d 828, 832 [Civ Ct 1982].)
Courts in this jurisdiction have consistently applied article 2 of the UCC to the leasing of chattels. (See, Industralease Automated & Scientific Equip. Corp. v R. M. E. Enters., supra; Laudisio v Amoco Oil Co., supra; United States Leasing Corp. v Franklin Plaza Apts., 65 Misc 2d 1082 [Civ Ct 1971]; Hertz Commercial Leasing Corp. v Transportation Credit Clearing House, 59 Misc 2d 226 [Civ Ct 1969], revd on other grounds 64 Misc 2d 910.) Even if the lessor retains title to the goods, where the contract price of a lease is as large as the sales price of the same item, the transaction is analogous to a sale and will be covered by the UCC. (Barco Auto Leasing Corp., supra; Uniflex, Inc. v Olivetti Corp., supra; United States Leasing Corp. v Franklin Plaza Apts., supra.)
Therefore, the analysis used by the courts in this jurisdiction to determine whether or not a lease sufficiently resembles a sale so as to bring it within the scope of the UCC may be applicable to the Agreement herein. Although the Agreement specifically provides that plaintiff will retain title to the software, the Agreement appears to have no term and, in fact, is referred to as a "perpetual license.” The economic effect of the Agreement is unclear from the sole submitted documentary evidence of the Agreement itself. Despite the Agreement spelling out the fee to be paid by defendant to plaintiff for use of the software, the court lacks information as to the actual value of the software. (But see, Note, op. cit., 77 Mich L Rev 1149, 1156 ["The economic result of a software loan is indistinguishable from a software sale. The price is apt to be the same in either case”], citing United States Leasing Corp. v Franklin Plaza Apts., supra.)
Neither party has submitted an affidavit by a person with knowledge of the transaction at issue nor is the intent of the parties and surrounding circumstances of the whole transaction between the parties clear from the Agreement alone as to whether this transaction was a sale or only a lease of com *86 puter software goods. In the context of the case law, as hereinabove, the contractual retention of title to the goods by CGI in and of itself is not determinative of whether this lease transaction resembled a sale for UCC applicability. There are factual triable issues raised in this regard and therefore dismissal of the implied warranty counterclaims for a sale for failure to sufficiently state a counterclaim or affirmative defense is not warranted. The court for purposes of this type of motion must accept the facts as alleged in the counterclaim as true. (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506 [1979].) Here there is a sufficient showing to support legally cognizable counterclaims for the breach of implied warranties of fitness and merchantability for a sale of goods within the scope of the UCC.
Finally, as to the first and second counterclaims, the CGI contention that the Agreement contains an express and/or implied disclaimer of implied warranties lacks merit. The contractual provision relied on by CGI in this regard fails to alert or call to defendant’s attention the exclusion of any warranty of merchantability or fitness for a particular known purpose but relates solely to CGI’s maintenance, service and repair obligations for the software systems. Nor does this clause use the words "merchantability”, "fitness”, "disclaimer”, "as is”, "warranty” or "all faults”.
The courts look to the relevant sections of the UCC, and even movant refers to the UCC, to test the validity of warranty disclaimers. The above words or other commonly understood language must be set forth in the contract, specifically and conspicuously, to call attention to the exclusion of warranties and make plain that there is no implied warranty in order to validate the exclusion of implied warranties. (UCC 2-316, 1-201 [10]; see also, Carbo Indus. v Becker Chevrolet, 112 AD2d 336 [2d Dept 1985]; Laudisio v Amoco Oil Co., supra.) Therefore the plaintiffs motion to dismiss the first and second counterclaims is denied.
Turning to that branch of the motion to dismiss the defendant’s third counterclaim for failure to sufficiently state a cause of action, movant characterizes it as a claim for breach of an express warranty for a "good working order software system and for adequate support services.” However, a review of the allegations of this counterclaim shows that it is clearly based on a breach of contract. The Agreement expressly states the CGI will provide "maintenance services” after installation of the system for the "reparation of any failure, malfunction, *87 defects or non-conformity in CGI Software which prevents such CGI software from performing in accordance with the specifications, documentation and criteria set forth in this agreement and any attachments thereto.” The Agreement further provides that "The liability of CGI for damages or expenses arising in connection with the failure of CGI software to perform in accordance with its specifications shall be limited to the return of any payments made by the Customer or the actual amount of said damages and expenses, whichever is less.”
The court finds that the allegations in the third counterclaim sufficiently set forth a cognizable legal claim for breach of that portion of the Agreement as stated above which clearly imposed a duty on CGI to provide maintenance support services for the adequate functioning and operation of the system. It is noted that no affidavits or other evidence has been submitted relating to the specifications and criteria to be applied for the software operational performance. This appears to raise triable factual issues as to the merits of the alleged contractual breach. It is further noted that there is no explicit language in the Agreement that it is the complete and exclusive statement between the parties. (See, Computerized Radiological Servs. v Syntex Corp., 595 F Supp 1495 [US Dist Ct, ED NY 1984], affd in part and revd in part on other grounds 786 F2d 72 [2d Cir 1986]; Barrientos v Sulit, 133 Misc 2d 1061 [Long Beach City Ct 1986].) Therefore, plaintiff’s branch of the motion to dismiss the third counterclaim is denied.
Accordingly, the plaintiffs motion is denied in its entirety.