**AMERICA ONLINE, INC., Plaintiff,**

v.

**ST. PAUL MERCURY INSURANCE CO., Defendant.**

No. Civ.A. 01–1636–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 20, 2002.

460

John F. Anderson, Richards McGettingan Reilly & West, Alexandria, Virginia, for plaintiff.

Mark A. Miller, Baker Botts, Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

LEE, District Judge.

This matter is before the Court on Plaintiff America Online Inc.'s ("AOL") Motion for Partial Summary Judgment on Count One of its First Amended Complaint against Defendant St. Paul Mercury Insurance Company ("St.Paul"). AOL is an Internet Service Provider who provides Internet access to its customers through access software. AOL was sued by various customers alleging that Version 5.0 of AOL's Internet access software ("AOL 5.0") damaged their computers. AOL now seeks St. Paul to defend AOL against these claims under the commercial general liability policy between the two parties. The issue presented is whether St. Paul has a duty to defend AOL under the parties' insurance policy against complaints alleging AOL 5.0 caused physical damage to, and loss of use of, customers' tangible property in the form of computers, computer data, software and systems.

For the reasons stated below, the Court holds that St. Paul does not have an obligation to defend AOL against the legal claims arising from AOL 5.0. An insurance policy is a contract, and like any

other contract the Court is bound by the plain terms of the agreement and cannot rewrite the policy to bind the parties to obligations they did not consent to. If there is any ambiguity in the terms to be interpreted, Virginia law instructs that ambiguity to be construed against the insurer. An insurer's duty to defend attaches whenever a complaint alleges claims that if proven would fall within the risk covered by the policy.

Applying these standards, the allegations in the underlying complaint are not covered by the policy between AOL and St. Paul. First, the Court holds that computer data, software and systems are not "tangible" property in the common sense understanding of the word. The plain and ordinary meaning of the term "tangible" is property that can be touched. Computer data, software and systems are incapable of perception by any of the senses and are therefore intangible. Accordingly, St. Paul has no duty to defend AOL against allegations in the underlying complaint alleging harm to consumers' computer data, software and systems. By the same token, the Court finds that the computer itself is tangible property because it is obviously a tactile, corporeal item. Because the claims in the underlying complaint allege the loss of use of consumers' computers, such claims are potentially covered by the parties' insurance policy.

However, the Court holds that the loss of use of consumers' computers is nonetheless excluded from coverage by the impaired policy exemption. The underlying complaint alleges that AOL 5.0 is a defective product that caused the loss of computer use by causing consumers' computers to "crash," rendering them inoperable. These claims are clearly barred by the impaired policy exclusion, which states that harm to property that is not physically damaged is excluded from coverage

where it is caused by a faulty or dangerous product. Finally, the allegations of harm to consumers' computers run squarely into the common law economic loss rule. At bottom, the underlying complaint alleges that AOL 5.0 is a defective component incorporated into a larger product, the consumers' computers. Any damages stemming from the loss of computer use are purely economic, do not constitute harm to property other than the integrated product, and are thus not recoverable under any tort theory. Accordingly, St. Paul does not have a duty to defend under the parties' insurance policy and partial summary judgment in favor of AOL is DENIED.

## I. BACKGROUND

Plaintiff AOL, a Virginia based corporation, produces and distributes software to be used by its members to access the Internet and other on-line services. In October 1998, AOL entered into an insurance contract with Defendant St. Paul. (Pl.'s Ex. 1, Excerpts from Technology Commercial General Liability Protection Policy ("Policy") at 2.) The Policy provides coverage to AOL for the period from April 1, 1999 through June 1, 2000.

### A. The Terms of the Policy.

The Policy states in pertinent part that St. Paul will "pay amounts [AOL] is legally required to pay as damages for covered bodily injury, property damage, or premises damage that: happens while this agreement is in effect and is caused by an event." (Policy at 2.) Property damage is defined as "physical damage to tangible property of others, including all resulting loss of use of that property; or loss of use of tangible property of others that isn't physically damaged." (*Id.*) The Policy defines an "event" as "an accident, including continuous or repeated exposure to sub-

stantially the same generic harmful conditions." (*Id.*) The Policy also states that "[St. Paul has a] duty to defend [AOL] against a claim or suit for injury or damage covered by this agreement. [St. Paul has such] duty even if all of the allegations of that claim or suit are groundless, false, or fraudulent." (*Id.* at 3.)

The Policy sets forth certain events that are excluded from coverage. For instance, the Policy will not "cover bodily injury or property damage that's expected or intended by [AOL]." (*Id.* at 16.) St. Paul is also not obligated under the Policy to "cover property damage to impaired property, or to property which isn't physically damaged, that results from: [1] [AOL's] faulty or dangerous products or completed work; or [2] a delay or failure in fulfilling the terms of a contract or agreement." (*Id.*) "Impaired property" is defined as "tangible property, other than [AOL's] products or completed work, that can be restored to use by nothing more than: [1] an adjustment, repair, replacement, or removal of [AOL's] products or completed work which forms a part of it; or [2] [AOL] fulfilling the terms of a contract or agreement." (*Id.*)

### B. The AOL 5.0 Lawsuits.

AOL released AOL 5.0 in October 1999. AOL 5.0 is essentially a software program consumers install on their computer to access the Internet through AOL's proprietary network. In January 2000, various class action lawsuits were filed against AOL alleging that installation and operation of AOL 5.0 was causing substantial damage to users' computer systems. Ten class action complaints were filed in various state courts and one in Canada. Approximately forty three complaints were consolidated in a multidistrict litigation ("MDL") proceeding in the United States District Court for the Southern District of Florida in June 2000. The MDL plaintiffs subsequently filed a consolidated complaint ("MDL Complaint") in that proceeding which lies at the heart of this action. (Pl.'s Ex. 2, *In Re America Online, Inc., Version 5.0 Software Litigation*, No. 00–1341–MD–GOLD, First Cons.& Am.Compl. (S.D.Fl. April 20, 2001) ("MDL Compl."))

The MDL Complaint generally alleges that "AOL 5.0 was deceptively marketed in that it was not 'risk free,' 'easy to use' and did not provide 'superior benefits,' but could actually harm computers" by, *inter alia*, disrupting Internet and local area network connections, causing "material instability" and crashing computers, and corrupting computer systems and files. (MDL Compl. ¶¶ 3–4.) Specifically, the MDL Complaint alleges that AOL 5.0 caused:

(1) interference to users' host systems communications configurations and settings such as non-AOL communications software and online services the plaintiffs are using or might want to use in the future; (2) the inability of users to connect to other ISPs, competitors of AOL; (3) the inability to run non-AOL email programs, or connect to local networks; (4) the addition or alteration of hundreds of files on the users' system, including many essential components of the Windows operating system, which may cause the system to become unstable; and (5) the inability of users to remove the AOL 5.0 software, so as to restore their computer's communications configuration, so that other competitor online services could be used.

(*Id.* ¶ 61.) The MDL Complaint alleges that the installation of AOL 5.0 "is so large or invasive that thousands of Class members have publicly complained of resulting system application instability, loss of data, loss of work and resulting loss of use, time and money." (*Id.* ¶¶ 65, 101.) Further,

removal of AOL 5.0 "would be virtually impossible ... without jeopardizing the operating system itself." (*Id.* ¶ 101.) As a result of AOL's conduct, the plaintiffs allege that their computers have suffered damage and an impairment to the integrity or availability of data, software programs, operating systems, and information contained in their computers. (*Id.* ¶¶ 101–102.) In addition, the MDL Complaint alleges that the plaintiffs lost the use of their computers and computer functionality after installing AOL Version 5.0. (*See id.* ¶¶ 11, 65, 67–70, 76, 99, 101, 102, 106.)

According to the MDL Complaint, AOL 5.0 was designed to change or reconfigure a users' computer systems. (*Id.* ¶¶ 43–48, 92, 98.) The MDL Complaint alleges that faced with increasing competition "AOL looked to a new software release—5.0—as a tool to unlawfully maintain and/or increase its market share." (*Id.* ¶ 42.) Part of the overall strategy, plaintiffs allege, was to "lock in" AOL subscribers by designing 5.0 with certain exit barriers. (*Id.* ¶ 43.) To further that purpose, the MDL Complaint alleges that AOL supplied consumers with "software which, unknown to the consumer is designed to modify the user's computer's operating system in such a manner as to make it difficult thereafter to connect to the networks of competing ISPs." (*Id.* ¶ 48.)

The MDL Complaint asserts seven claims for relief: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.;* (2) violation of various State Consumer Protection Acts; (3) injunctive relief to protect against Unfair Deceptive Acts and Practices and Consumer Fraud; (4) Product Liability for Defective Design; (5) Product Liability Failure to Warn; (6) Negligence; and (7) Negligent Misrepresentation. The plaintiffs sought compensatory damages, disgorgement of AOL's profits realized as a result

of AOL 5.0, treble and punitive damages, and injunctive relief.

AOL requested St. Paul to provide defense coverage under the Policy. St. Paul refused, finding that the underlying action did not fall under the Policy. Consequently, AOL retained legal counsel to defend itself against the AOL 5.0 claims. AOL then filed a four count Complaint in this Court on October 26, 2001 against St. Paul. Count One alleges breach of contract, seeking a declaration that St. Paul is obligated to defend AOL and therefore pay defense costs with respect to all the underlying AOL Version 5.0 complaints, including the MDL Complaint. Count Two seeks compensatory damages for the same alleged breach. Count Three seeks a declaration that St. Paul is obligated to indemnify AOL, *i.e.,* pay settlements and judgments arising from the underlying actions. Finally, Count Four seeks compensatory damages, including attorney's fees, for St. Paul's alleged bad faith breach of contract. Count Four was subsequently dismissed and AOL filed a First Amended Complaint limiting the claims to the first three Counts on March 15, 2002. AOL had previously filed a motion for partial summary judgment on Count One that is now before the Court.

## II. DISCUSSION

### A. Standard of Review.

When reviewing the evidence on summary judgment, the court must view the facts and inferences to be drawn in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Id.* at 588, 106 S.Ct. 1348. Under Rule 56(c) of the Federal Rules of Civil

Procedure, a court should grant a motion for summary judgment when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Virginia Law and the Duty to Defend.

■■■ Virginia law treats an insurance policy as a contract that should be construed to give effect to the intent of the parties. *See Salzi v. Virginia Farm Bureau Mutual Ins. Co.*, 263 Va. 52, 556 S.E.2d 758, 760 (2002) (citations omitted); *Town Crier, Inc. v. Hume*, 721 F.Supp. 99, 101 (E.D.Va.1989). "[A]s in the case of any other contract, the words are given their ordinary and customary meaning when they are susceptible of such construction." *Salzi*, 556 S.E.2d at 760; *Combs v. Equitable Life Ins. Co. of Iowa*, 120 F.2d 432, 436 (4th Cir.1941) ("Policies of insurance, as other contracts, should be construed according to the ordinary sense and meaning of the terms employed, and, if they are clear and unambiguous, their terms are to be taken in the plain, ordinary and popular sense.") (citations and internal quotes omitted).

■■■ When the terms are ambiguous, courts construe the language in favor of the insured and against the drafter—the insurer. *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th Cir.1995); *Joseph Bornstein, Ltd. v. Nat'l Union Fire Ins. Co.*, 828 F.2d 242, 245 (4th Cir.1987) (same). Similarly, "exclusions from coverage are enforceable only when the exclusions 'unambiguously bring the particular act or omission within its scope.'" *Fuisz*, 61 F.3d at 242 (quoting *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 427 S.E.2d 193, 196 (1993)). "Exclusionary language in an insurance policy is to be construed most

strongly against the insurer, and the burden is upon the insurer to prove that an exclusion applies." *Virginia Elec. and Power Co. v. Northbrook Prop. and Cas. Ins. Co.*, 475 S.E.2d 264 (1996) (citing *Johnson v. Ins. Co. of N. Am.*, 232 Va. 340, 350 S.E.2d 616, 618 (1986)); *Fuisz*, 61 F.3d at 242 (citations omitted) (same).

■■■ Under Virginia law, the "obligation [of an insurer] to defend is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Virginia Elec.*, 475 S.E.2d at 265 (quoting *Lerner v. Gen. Ins. Co. of Am.*, 219 Va. 101, 245 S.E.2d 249, 251 (1978)). The duty to defend is broader than the obligation to indemnify in the sense that the insurer may have a duty to defend against a lawsuit notwithstanding that at the end of the day the insurer is not liable for indemnification. *See Lerner*, 245 S.E.2d at 252.

■■■ To determine whether an insurer has a duty to defend, the "eight corners rule" requires review of "(1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." *Fuisz*, 61 F.3d at 242 (citing *Town Crier*, 721 F.Supp. 99 at 103). The "eight corners rule" for determining the duty to defend is a combination of the Exclusive Pleading and Potentiality Rules. *Town Crier*, 721 F.Supp. at 102. Under the Exclusive Pleading Rule, "an insurer's duty to defend is determined solely by the allegations in the pleading." *Id.* The Potentiality Rule extends the Exclusive Pleading Rule to require the insurer to defend if there is the potential that the "claim, as stated in the pleadings, could be

covered by the policy." *Id.*[1] An insurer can avoid its obligation to defend the insured "[o]nly when it appears clearly [that the insurer] would not be liable under its contract for any judgment based upon the allegations." *Parker v. Hartford Fire Ins. Co.,* 222 Va. 33, 278 S.E.2d 803, 805 (1981). Applying these standards, the Court holds that St. Paul does not have a duty to defend AOL under the Policy against the allegations in the underlying MDL Complaint.

### C. Property Damage under the Policy and the MDL Complaint.

The Court initially turns to the question of whether the MDL Complaint alleges "physical damage" to "tangible property" as understood by the Policy. The Policy defines property damage as "physical damage to tangible property of others, including all resulting loss of use of that property; or loss of use of tangible property of others that isn't physically damaged." (Policy at 2.) The MDL Complaint alleges that AOL 5.0 damaged consumers' com-

puters, damaged their software, damaged their data, damaged their computers' operating systems, and caused the loss of data and the loss of use of the computers. (*See* MDL Compl. ¶¶ 3, 4, 17, 61, 65, 68, 76, 96.)

### 1. Computer data is not tangible property.

The first issue presented is whether computer data, software and systems are tangible property. AOL contends that these items are tangible property because they are "capable of being realized." AOL points to several court rulings from various contexts where it claims courts have found such items to be tangible.[2] On the other hand, St. Paul argues that computer data and the like are not tangible property because they constitute property that one cannot touch. St. Paul represents that various courts have come to that conclusion.[3]

Because the Policy does not define tangible, the Court turns to the plain meaning of the word tangible. *See Solers, Inc. v. Hartford Cas. Ins. Co.,* 146

---

**1.** To the extent that St. Paul argues that the Court should look outside the "eight corners" of the Policy and the MDL Complaint to determine the duty to defend, it is incorrect. For this reason, the Court also declines to consider St. Paul's expert testimony on the issue of physical damage. The issues presented herein are ones of contract. It is typically improper for a court to rely on expert testimony for purposes of interpreting the terms and clauses of a contract. *See Forest Creek Assoc. v. McLean Savs. and Loan Ass'n,* 831 F.2d 1238, 1242 (4th Cir.1987) (affirming district court's decision to exclude expert testimony proffered by plaintiffs for the purpose of interpreting contract clause because the matter was a question of law for the court). This general rule is especially applicable here where the Court's inquiry is limited to the "eight corners" of the documents.

**2.** AOL cites *America Online Inc. v. LCGM,* 46 F.Supp.2d 444 (E.D.Va.1998); *MW Mfrs., Inc. v. Friedman Corp.,* No. 97C8319, 1998 WL

417501 (N.D.Ill. July 21, 1998); *Wal–Mart Stores, Inc. v. City of Mobile,* 696 So.2d 290 (Ala.1996); *South Central Bell Tel. Co. v. Barthelemy,* 643 So.2d 1240 (La.1994); *MAI Basic Four, Inc. v. Generic Bus. Solutions, Inc.,* No. 9908, 1990 WL 3665 (Del.Ch. Jan. 16, 1990); *Retail Sys. Inc. v. CNA Ins. Co.,* 469 N.W.2d 735 (Minn.Ct.App.1991); *Communications Groups, Inc. v. Warner Communications, Inc.,* 138 Misc.2d 80, 527 N.Y.S.2d 341 (N.Y.Civ.Ct.1988); *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511 (9th Cir.1993); *Advanced Computer Servs. v. MAI Sys. Corp.,* 845 F.Supp. 356 (E.D.Va.1994).

**3.** St. Paul relies on, among other cases, *St. Paul Fire & Mutual Marine Ins. Co. v. Nat'l Computer Sys.,* 490 N.W.2d 626, 631 (Minn. Ct.App.1992); *Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808 (3rd Cir.1994); *United States v. Thomson Corp.,* 01–1419, 2001 WL 1689712 (D.D.C. Oct.30, 2001); *In Re Maida,* No. 98–B–40900, 2000 WL 1025115 (Bankr.N.D.Ill. July 25, 2000).

F.Supp.2d 785, 792 (E.D.Va.2001) (when a word is not defined in policy "[g]eneral rules of contract interpretation, and specifically insurance contractual interpretation, require that [word] be given its plain and ordinary meaning ...") (citations omitted). Black's Law Dictionary defines "tangible" as:

> Having or possessing physical form. Capable of being touched and seen; perceptible to the touch; tactile; palpable; capable of being possessed or realized; readily apprehensible by the mind; real; substantial.

BLACK'S LAW DICTIONARY 1014 (6th ed. abridged 1990). Webster's Third New International Dictionary of the English Language defines the term as

> 1a: capable of being touched: able to be perceived as materially existent esp. by the sense of touch: palpable, tactile ... b. substantially real: material ... 2: capable of being realized by the mind: conceived or thought of as definable or measurable ... 3: constituting or consisting of a corporeal item capable of being appraised at an actual or approximate value.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2337 (1993).

 As these definitions make clear, the plain and ordinary meaning of the word tangible is something that is capable of being touched or perceptible to the senses. *See Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 818 (3rd Cir.1994) ("Tangible property is property that can be felt or touched, or property capable of being possessed or realized."). *See also* Paul M. Yost, *et al., In Search of Coverage in Cyberspace: Why the Commercial General Liability Policy Fails to Insure Lost or Corrupted Data*, 54 SMU L.REV. 2055, 2066–68 (2001) (discussing in detail various dictionary definitions of the term tangible

and the word's etymology to conclude that "tangible property" is limited to corporeal items). Computer data, software, and systems do not have or possess physical form and are therefore not tangible property as understood by the Policy. *Cf. Lucker Mfg.*, 23 F.3d at 820–821 (noting that "by making 'tangibility' the touchstone of coverage, the [insurance policy] excludes significant class of property for which liability insurance could be provided—property like system designs or computer software.").

Computer data can be transmitted and stored in a variety of ways, but none of them renders the data capable of being touched. A "bit" on a computer disk or hard drive is not palpable. Electrical impulses that carry computer data may be observable with the aid of a computer, but they are invisible to the human eye. *See Advanced Computer Servs. v. MAI Sys. Corp.*, 845 F.Supp. 356, 363 (E.D.Va.1994) ("electrical impulses of a program in a [Random Access Memory] are material objects, which although themselves imperceptible to the ordinary observer, can be perceived by persons with the aid of a computer."). An ordinary person understands the term "tangible" to include something she can touch, such as a chair or a book, not an imperceptible piece of data or software that can only be perceived with the help of a computer.

Excluding computer data and software from the meaning of the term tangible is consistent with the only reported case that directly addresses whether such property is tangible for insurance coverage purposes. In reviewing policy language substantially similar to the case at bar, the court in *State Auto Property and Casualty Insurance Co. v. Midwest Computers & More* tackled the issue of whether an insurer owed a duty to defend a policyholder against claims alleging negligent performance of service work on a computer sys-

tem causing computer data loss. 147 F.Supp.2d 1113 (W.D.Okl.2001). Relying on the ordinary meaning of the term "tangible," the court succinctly found that "computer data cannot be touched, held, or sensed by the human mind; it has no physical substance. It is not tangible property." *Id.* at 1116. Accordingly, the court found that the insurer did not have a duty to defend against claims of data loss. *Id.*

Finding that computer data and software is intangible is also consistent with the long line of precedent holding that ideas, information, and designs are not tangible property. *See generally* Yost, *et al.,* 54 SMU L.Rev. at 2068–70 (discussing cases holding that injury to, or loss of, ideas and concepts, without damage to the medium in which they are stored, does not qualify as harm to tangible property). For instance, in *St. Paul Fire & Marine Insurance Co. v. National Computer Systems,* the court held that misappropriated proprietary data was not "tangible" property for the purposes of liability coverage because although the data was stored in the tangible form of a notepad, "the information itself was not tangible." 490 N.W.2d 626, 631 (Minn.Ct.App.1992). In so holding, the court explicitly distinguished *Retail Systems Inc. v. CNA Insurance Co.,* 469 N.W.2d 735 (Minn.Ct.App.1991). The *St. Paul* court clarified that *Retail Systems* held that computer tapes *and* data are tangible property and *Retail Systems* was therefore controlled by the fact that in that case "both the information and the medium on which the information was stored were lost." *St. Paul,* 490 N.W.2d at 631. Similarly in *Lucker Manufacturing v. Home Insurance Co.,* the Third Circuit held that a system design did not constitute tangible property because the value lay in the idea, not the plans memorializing the design: the idea itself was intangible. 23 F.3d at 819–821. The *Lucker Manufacturing* court explained that "it would require too great a departure from the meaning of 'tangible' to hold that a system design is tangible property covered under the policy." *Id.* at 821.

 In this case, the Court will "not strain to create an ambiguity in the term where none exists" and hold that computer data, software and systems are tangible property. *See Solers,* 146 F.Supp.2d at 792. The Policy only covers property damage to tangible property, the language could not be more clear. If the property is not tangible, then it is not covered—period. Similar to the information written on a notepad, or the ideas recorded on a tape, or the design memorialized in a blueprint, computer data, software and systems are intangible items stored on a tangible vessel—the computer or a disk. AOL's reliance on caselaw drawn from outside the insurance context,[4] and conflicting holdings from various state courts addressing the tangibility of computer software and data for tax purposes,[5] is misplaced and unper-

4. *LCGM,* 46 F.Supp.2d at 451–52 (discussing tangibility of computer systems in the context of a trespass to chattel claim); *MW Mfrs., Inc.,* 1998 WL 417501, at * 4 (discussing Illinois common law tort requiring determination of whether end product of business relationship was a tangible object); *MAI Basic Four, Inc.,* 556 So.2d 1259, 1990 WL 3665, at * 2 (finding that computer disks or tapes containing software are tangible); *Communications Groups, Inc.,* 527 N.Y.S.2d at 341 (addressing issue of whether computer software was a service or good under the Uniform Commercial Code); *MAI Sys. Corp.,* 991 F.2d at 518 (discussing whether Random Access Memory is a "material object" under the Copyright Act); *Advanced Computer Servs.,* 845 F.Supp. at 363 (same).

5. *Compare, e.g., Wal–Mart Stores, Inc.,* 696 So.2d at 291 (software is tangible for tax purposes); *South Central Bell Tel. Co.,* 643 So.2d at 1240 (same), *with Northeast Data-*

suasive. AOL has not provided, nor has this Court uncovered, *any* case holding that computer data is tangible property for the purposes of insurance coverage. In light of the plain meaning of the term tangible and established case-law, the Court holds that the Policy does not cover damage to computer data, software and systems because such items are not tangible property.

However, the Court holds that a computer is tangible property. A computer is the "medium that holds" the data, the software and the systems; unlike its cargo, the computer can be "perceived, identified or valued." *Midwest Computers*, 147 F.Supp.2d at 1116. The MDL Complaint alleges that AOL 5.0 injured consumers' computers. It states that AOL 5.0 "harmed consumers' computers," (MDL Compl. ¶ 3), and "caused damage to plaintiffs' computers." (*Id.* ¶ 101). A computer is obviously property "having or possessing physical form" and therefore qualifies as tangible property under the Policy. *See Midwest Computers*, 147 F.Supp.2d at 1116.

### 2. Physical damage v. loss of use of tangible property.

The second half of the Policy definition of "property damage" requires the Court to determine whether the MDL Complaint alleges "physical damage" to the plaintiffs' computers. (Policy at 2.) The Court holds that it does not. The common use of the term "physical" means "relating or pertaining to the body, as distinguished from the mind, soul or the emotions...." BLACK'S LAW DICTIONARY 794 (6th ed. abridged 1991). Similarly, the definition of "physical injury" means "bodily harm or hurt, excluding mental distress, fright, or emotional disturbance." *Id.* The MDL

Complaint is rife with allegations that AOL 5.0 physically damaged consumers' computer data and systems. But these claims go to the "brains" of the computer, not its physical make-up and as discussed above, damage claims regarding intangible property such as computer data are not covered by the Policy.

The allegations of injury to the computer itself are more properly characterized as a loss of use of the computer. (*See, e.g.,* MDL Compl. ¶ 76 ("The resulting problems include . . . loss of use of the computer."); *See also id.* ¶¶ 65, 99, 101, 106b–c). Viewed in this light, there is no "physical" damage alleged to the plaintiffs' computers in the common understanding of the word. There is nothing physical about the loss of use or access to a computer. The MDL Complaint does not allege physical injury to the body or substance of the computer.

AOL urges the Court to apply the holding in *American Guarantee & Liability Insurance Co. v. Ingram Micro Inc.,* to find that loss of computer use constitutes physical damage to the computer. No. 99–185, 2000 WL 726789 (D.Ariz. April 18, 2000). In that case, the court found that computers suffered "physical damage" as required by the insurance policy where information stored in the computers' memory was destroyed and the computers' utility was hampered. *Id.* at *3. The Court declines to adopt the reasoning in *Ingram Micro*. The court in *Ingram Micro* did not apply the plain meaning of the word "physical." Rather, the court relied on the increased importance of computers in our lives and the reflection of this level of importance in various state and federal statutes qualifying loss of computer data as physical damage. *Id.* Although the im-

*com, Inc. v. City of Wallingford,* 212 Conn. 639, 644, 563 A.2d 688 (1989) (computer software is intangible property); *Gilreath v. Gen.*

*Elec. Co.,* 751 So.2d 705, 708 (Fla.Dist.Ct. App.2000) (same).

portance of computers in our personal and professional lives cannot be overstated, this Court is bound by the terms of the insurance policy. Applying the plain meaning of the word "physical," the Court holds that the MDL's allegations of loss of computer use do not constitute "physical damage" to the plaintiffs' computers.

Notwithstanding that. the MDL Complaint does not allege "physical damage" to plaintiffs' computers, the Court finds that it alleges "the loss of use" of such tangible property. The Complaint alleges throughout that AOL 5.0 caused the loss of use of plaintiffs' computers and computer functionality. (*See* MDL Compl. ¶¶ 11, 65, 67–70, 76, 99, 101, 102, 106.) For instance, the MDL Complaint alleges that AOL 5.0 caused consumers' computers to freeze preventing consumers from accessing and using their computers. (*Id.* ¶¶ 3, 62, 106(c).) Similar to a computer virus that causes a computer to crash, the MDL Complaint alleges that AOL Version 5.0 rendered plaintiffs' computers completely inoperable. Thus, "[b]ecause a computer clearly is tangible property, an alleged loss of use of computers constitutes property damage within the meaning of [the Policy]." *Midwest Computers*, 147 F.Supp.2d at 1116.

**D. Impaired Property Exemption.**

The Court finally turns to whether the impaired property exclusion of the Policy bars coverage of the plaintiffs' loss of computer claims. The Policy excludes "property damage to impaired property, or to property which isn't physically damaged, that results from: [1] [AOL's] faulty or dangerous products or completed work; or [2] a delay or failure in fulfilling the terms of a contract or agreement." (MDL Compl. at 16.) "Impaired property" is defined as "tangible property, other than [AOL's] products or completed work, that

can be restored to use by nothing more than: [1] an adjustment, repair, replacement, or removal of [AOL's] products or completed work which forms a part of it; or [2] [AOL] fulfilling the terms of a contract or agreement." (*Id.*)

Here, the MDL Complaint alleges the loss of use of consumer's computers, not that the computer itself has been physically damaged. *See* discussion Part II.C.2, *supra.* The injury at issue thus squarely falls within the label of "property which isn't physically damaged" under the impaired property exclusion. The crux of the MDL Complaint is that the loss of computer use was caused by AOL 5.0, which the Complaint consistently alleges is a "faulty or dangerous" product. (*See* MDL Compl. ¶ 60) ("AOL 5.0 had been rushed to the market ... while it still included substantial bugs and incompatibility with numerous applications and operating systems."); *id.* ("AOL followed its Chairman Steve Case's command strategy that market share was more important than safe software."); *id.* ¶ 62 ("By installing AOL 5.0, consumers unknowingly exposed their computer systems and software to a defectively designed and/or unreasonably dangerous software installation process that causes serious injury ..."); *id.* ¶ 120 ("The product was defective in its design."); *id.* ¶ 124 ("defective condition of the product.") The plain language of the Policy clearly states that the allegations in the MDL Complaint are barred from coverage under the impaired property exclusion because AOL's defective product caused the loss of computer use.

Holding otherwise would eviscerate the common law "economic loss" rule. The economic loss rule generally bars claims in tort for economic losses, limiting recovery for such losses to the law of contract. *See, e.g., Beard Plumbing and Heating, Inc. v. Thompson Plas-*

tics, Inc. NIBCO, 152 F.3d 313, 316 (4th Cir.1998) (applying "economic loss" doctrine under Virginia law); *Pulte Home Corp. v. Osmose Wood Preserving Inc.*, 60 F.3d 734, 739–41 (11th Cir.1995) (discussing various applications of Florida variant of "economic loss rule"). In *East River S.S. Corp. v. Transamerica Delaval*, the Supreme Court explained that when a product "injures itself" because one of its component parts is defective, a purely economic loss results to the owner for which no action in tort lies. 476 U.S. 858, 870, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (cited by *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55, 57 (1988)).

The Eighth Circuit applied Minnesota's version of the "economic loss" doctrine in *Transport Corp. of America v. IBM* to claims of negligence and strict liability where a disk drive incorporated into a computer system contained defective data causing the system to shut down. 30 F.3d 953, 956–57 (8th Cir.1994). The court found that "where a defect in a component part damages the product into which that component was incorporated, economic losses to the product as a whole, [are] not losses to other property under the economic loss rule." *Id.* The data are in effect a component of the entire system and thus not separate property whose damage triggers tort liability. *Id.See also Rockport Pharmacy Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir.1995) (applying Missouri variant of economic loss rule to hold that pharmacy was not entitled to an award of damages for loss of data caused by faulty computer system because loss amounted to solely economic damages not recoverable under tort).

In this case, all the claims alleged in the MDL Complaint sound in tort yet allege nothing more than economic losses. The MDL Complaint alleges that the installa-

tion of AOL 5.0 "is so large or invasive that thousands of Class members have publicly complained of resulting system application instability, loss of data, loss of work and resulting loss of use, time and money." (*Id.* ¶¶ 65, 101.) The MDL Complaint alleges that "[a]s a result of the injurious changes AOL 5.0 makes to Plaintiffs and Class members' operating systems ... Plaintiffs' and Class members have had to expend time and labor repairing machines." (*Id.* ¶ 99.) Similar to the defective data in *Transport Corp.*, once incorporated into plaintiffs' computer systems, AOL 5.0 was a defective component part that caused plaintiffs' computers to malfunction in the form of crashing or freezing. The only losses flowing from plaintiffs' computer crashes were purely economic and did not constitute losses to other property. Such damages are not recognized under any tort theory pursuant to the economic loss rule and therefore St. Paul did not have a duty to defend against such claims.

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED on Count One of Plaintiff's First Amended Complaint.

The Clerk is directed to forward a copy of this Order to counsel.